FARRINGTON H. MARSHALL *vs.* EBEN N. PERRY, *et al.*

Cumberland. Decided May 3, 1877.

*Sale. Usage.*

A party who sells butter with a warranty of its quality cannot limit or control the legal effect of such warranty at common law by proof of a local usage among merchants in the trade, where the sale is made, to the effect that in the ordinary transactions in the trade, the seller is not liable. to take back the butter or make any deduction from the price agreed, unless the purchaser examines the butter as soon as may be after delivery and, in case of defect in quality, returns it to the seller, or gives him notice of the defect at once.

A local usage is not binding upon a party to a contract to be affected by it, unless it is shown that he had knowledge of it at the time he made the contract.

ON EXCEPTIONS, from the superior court.

ASSUMPSIT, for the price of a quantity of butter, $170.96. The amount and price of the butter were admitted as alleged in the writ.

The defendants claimed that the butter was warranted to be of a certain quality, and that a portion of it was not of that quality, and claimed a reduction in the price on that account.

Upon the question of the terms of the warranty, testimony was conflicting; but the plaintiff claimed that by the contract of sale, and also under the custom of the trade in Portland, if there were a warranty and a breach of it, the defendant was bound to return the goods, or give notice of the breach of the warranty within reasonable time after receiving the goods, or he would be precluded from having any reduction in the price.

The defendant admitted that no such notice was given within ten days, or for a long time thereafter.

The following is a full report of the testimony upon the question of custom.

*Charles Walker*, called by the plaintiff, testified : I am a member of the firm of Charles McLaughlin & Co., composed of three members besides myself,—wholesale grocers, not dealing in butter. It is my opinion a custom has been fallen into by general consent as to the time when a man shall either accept or reject his goods

and notify the sellers.    We put it on our bill head, ten days.
The general accepted time is time enough to get the goods home,
examine them and give notice, which we think is ten days.    We
claim that the notice is in writing.    I do not wish to be understood
that there is any organized agreement, but we have fallen into it
by general consent.    That in my opinion is the general usage.

*Cross examined.*    I cannot say it is the universal custom in the
city ;  can't say how long since it arose,—several years at least.    I
have not personal knowledge whether it applies to articles like
butter and cheese.    We deal in cheese somewhat.

*Question.*    You understand by that, if a man receives a lot of
goods, they are sold to him ;  he cannot reject them unless he does
it in a usual time, which you fix at ten days.

*Answer.*    We try to bind them to that.    That does not apply
to goods when they could not be examined in ten days.    We
should not claim it applied to goods falsely packed, or goods
warranted to keep for years in any climate, like canned goods.
If any article like canned goods should turn out bad in six months,
they are liable to be returned.

*Question.*    Do you understand it applies to cases where goods
are not returned and a part of them does not come up to the qual-
ity ordered.

*Answer.*    I can only speak as far as our custom goes.    We do
not allow any discount on goods at all.    We claim they must be
returned in ten days.    That is our custom.    We sometimes vary
it out of policy.

*Direct resumed.*    I have dealt in butter in years gone by.
Butter exposed to the air will deteriorate more in September and
October than in January, February and March.

*Cross resumed.*    The more butter is exposed to the air, the
worse it is.    I should keep it as near air tight as possible.    Butter
kept in a cool cellar, ought to keep well in September and Octo-
ber, if not knocked out of the the tubs too many times.

*Question.*    Was it your practice, if you bought ten tubs of but-
ter, to examine every tub.

*Answer.*    I do not know.    I should apply the same rule I do to

cheese. If I take in fifty boxes, I examine six, eight or ten, and if satisfactory, pile up the rest without examining further.

*George L. Hodgdon*, called by the plaintiff, testified: I belong to the firm of Hodgdon and Soule, merchants on Commercial street—have dealt somewhat extensively in butter. There is a custom among merchants in regard to the terms on which butter is sold by wholesale. I should say the common usage was, that in a reasonable time they should be notified if there was any dissatisfaction with the goods shipped. A reasonable time would be owing to the men we were dealing with. The number of days in which discount may be demanded, differs with different concerns.

*A. M. Tyler,* called by the plaintiff, testified: I am a purchaser of Vermont butter; have been in the business ten years. The general usage among those that deal in butter, I should say, was if the butter was not what they sent it for, to notify the parties, and they would either have it returned, or make the price satisfactory, at once on examination. The custom is to examine it and ascertain whether it is good or bad.

*Cross examined.* We deal with more or less of the dealers in the city,—don't know the custom of Perry & Foss; never dealt with Thompson and Hill; know what Hodgdon's custom is; have dealt with him; think I never returned any butter to them; don't know the custom of Bean Brothers, nor of Dodge.

*E. N. Perry*, defendant, recalled, testified: I don't know of any general custom, such as has been spoken of here. So far as I know, each man has his own custom. I do not conform to any such custom.

The counsel for the defendants contended that no such custom or usage was proved, as matter of law, as would affect this contract. But the presiding judge instructed the jury as in the opinion appears.

The verdict was for the plaintiff, for the full amount claimed; and the defendants alleged exceptions.

*J. H. Drummond & J. O. Winship*, for the defendants.

*J. O'Donnell*, for the plaintiff.

LIBBEY, J.   This was assumpsit for the price of a quantity of

butter, sold by plaintiff to defendants. The defendants claimed that plaintiff warranted the butter to be of a certain quality, and that a portion of it was not of that quality, and claimed a deduction from the price on account of the breach of the warranty.

The plaintiff claimed that if there was a warranty and a breach of it, under the usage of the trade in Portland, where the sale was made, the defendants were bound to return the goods, or give notice of the breach of the warranty, within a reasonable time after receiving the goods, or they would be precluded from having any deduction on account of the breach of warranty.

The plaintiff introduced evidence having some tendency to prove that there was such a usage as he claimed, applicable to the general transactions of merchants in the trade, but the evidence had no tendency to show that the alleged usage applied to sales with an express warranty of quality.

The defendants introduced evidence tending to prove that they had no knowledge of the usage claimed by plaintiff. They did not claim that the butter was returned or notice given within a reasonable time after the purchase.

Upon the point thus raised by the parties, the presiding judge instructed the jury as follows: "It is claimed, on the part of the plaintiff, that the rights of the parties are affected by the general usage of the trade, proved to have been established. The value of testimony relating to usage of trade, in all cases, depends either upon the universality of the usage in the trade or upon its being known to the parties at the time of the transaction. That is to say, a half a dozen different firms in the same trade may have different customs, different methods of doing business and different usages to which they conform. Of course persons dealing with each of these firms, having knowledge of their manner of doing business, familiar with their usage, may properly be held in a court of law to be bound by such usage. The usage may be considered as entering into the contract. But any such attempted usage as that, by a single firm or a few firms, can only affect the parties who deal with those firms and have knowledge of the usage so prevailing in that business. But, on the other hand, there may be a usage so universally prevailing throughout the

trade, known to all persons who have relations in business of that sort, that the jury may be justified in finding that the parties, from the very fact of the universality of the usage, have dealt with each other with reference to that usage.

"So here, whether any general usage of the trade has been established, which should affect under this rule the legal rights of the parties, is a question of fact for you to determine.

"If this evidence satisfies you that there is a general custom among butter merchants in the city of Portland, by which the purchaser of butter is to examine it at once, upon its delivery to him, and is either to return it at once or notify the seller, and if the custom prevails to that extent, that if he does not give such notice he shall not be entitled to a discount upon the price agreed upon in the contract, if a general custom extending so far as that has been proved to your satisfaction, I shall rule as matter of law that there is nothing unreasonable in the custom; and if the jury find it established, you may consider it with reference to the legal rights of the parties in this case. In other words, it may be considered as a general usage of trade, and entering into and affecting the contract regarding this sale of butter."

This instruction must have been based upon the assumption that the jury would find the contract of warranty of the quality of the butter as claimed by the defendants. The defendants claimed under an express contract of warranty. They did not claim under the warranty qualified by the usage claimed by plaintiff. If the jury should find that there was no such warranty as the defendants claimed, they were entitled to no deduction, and the usage could have nothing to do with the rights of the parties. The instruction, then, authorized the jury if they found the contract claimed by the defendants, and the usage claimed by the plaintiff, to consider such usage as a general usage of trade entering into and affecting the contract of warranty, without finding that the defendants had knowledge of such usage. We think the instruction erroneous. The decisions as to the effect of usage upon contracts, are not uniform; but we think the current of authorities in this country, both state and federal, establishes the proposition that local usage cannot be shown to contradict or

vary the terms of a contract express, or implied by law, or control its legal interpretation and effect. Upon a careful examination of the cases apparently in conflict, it will be found that they do not differ so much in legal principles as in their application to particular cases.

In Massachusetts, this subject was fully considered in *Dickinson* v. *Gay*, 7 Allen, 29, in which the court, after a full examination of the authorities in that and other states, held that if manufactured goods are sold by sample, by a merchant who is not a manufacturer, and both the sample and the bulk of the goods contain a latent defect, there is no implied warranty against the defect, and evidence is inadmissible to show that by usage of merchants the seller is responsible therefor. In discussing the question the court say : "The gist of the objection is not that the custom is in contradiction to the express terms of the contract; but that it permits a general rule of law which is applicable to the contract, to be superseded by a local rule, adopted by particular classes of men, and thus leads to confusion, misunderstanding and wrong." Again, " another principle by which usages are limited, is that they are void if they contradict the terms of a contract, or the legal interpretation or effect of a contract."

These principles were fully affirmed in the following cases, subsequently decided by that court. *Dodd* v. *Farlow*, 11 Allen, 426. *Potter* v. *Smith*, 103 Mass. 68. *Davis* v. *Galloupe*, 111 Mass. 121. *Brown* v. *Foster*, 113 Mass. 136. *Haskins* v. *Warren*, 115 Mass. 514.

In New York, in *Collender* v. *Dinsmore*, 55 N. Y. 200, upon a careful examination of the authorities on the subject, the same principles are affirmed. The court say, "custom or usage is resorted to only to ascertain and explain the meaning and intention of the parties to a contract, when the same cannot be ascertained without extrinsic evidence, but never to contravene the express stipulations ; and if there is no uncertainty as to the terms of a contract, usage cannot be proved to contradict or qualify its provisions." "Usage is sometimes admissible to add to or explain, but never to vary or contradict, either expressly or by implication, the terms of a written instrument, or the fair and legal import of a contract."

In Pennsylvania, the same doctrine is established. *Coxe* v. *Heisley*, 19 Pa. St. 243. *Witherill* v. *Neilson*, 20 id. 448.

In *Barnard* v. *Kellogg*, 10 Wall. 383, the supreme court of the United States affirms the same doctrine. After defining the proper office of a custom or usage as affecting contracts, the court say, "And it is well settled that usage cannot be allowed to subvert the settled rules of law. Whatever tends to unsettle the law, and make it different in the different communities into which the state is divided, leads to mischievous consequences, embarrasses trade, and is against public policy. If, therefore, on a given state of facts, the rights and liabilities of the parties to a contract are fixed by the general principles of the common law, they cannot be changed by any local custom of the place where the contract was made." This court has affirmed the same doctrine. *Randall* v. *Smith*, 63 Maine, 105.

Under the contract of warranty claimed by defendants, the rights and liabilities of the parties were fixed and well defined by the general principles of the common law. To authorize the defendants to maintain an action for breach of the warranty, it was not necessary that they should examine the butter at once, and either return it to plaintiff or give him notice of the breach. The legal interpretation of the contract made the plaintiff liable for the damages on proof of the breach of the warranty. The rule given to the jury steps in and supersedes the well defined legal effect of the contract as made by the parties, and substitutes therefor the qualified and limited liability under the local usage claimed by the plaintiff. This could not have been the intention of the parties. If they knew the usage, and their rights and liabilities under it, and made an express contract of warranty, it must be presumed that they were not satisfied with their rights and liabilities under the usage, and therefore made the express contract, taking the case out of the usage.

The usage was local. If not known to the parties, it could in no event affect their rights and liabilities. *Packard* v. *Earle*, 113 Mass. 280. *Nonotuck Silk Co.* v. *Fair*, 112 Mass. 354. *Dodge* v. *Favor*, 15 Gray, 82. *Fisher* v. *Sargent*, 10 Cush. 250. *Walls* v. *Bailey*, 49 N. Y. 464. *Barnard* v. *Kellogg*, *supra*. The

only evidence on the part of the plaintiff, tending to show that the parties had knowledge of the usage, was that in regard to its universality. There was evidence by defendants tending to show that they had no knowledge of it. If the usage was one that could affect the rights and liabilities of the parties, the jury should have been instructed to give it no effect unless they found from the whole evidence, that it was known to the defendants when the contract was made. *Exceptions sustained.*

DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.