CHARLES J. McLEOD, and another, *vs.* CALVIN J. JOHNSON.

Penobscot.    Opinion March 10, 1902.          .

*Evidence.    Replevin.    Fraud.    Warranty.    Estoppel.    Res Gestae.    Pleading.*

Words spoken or acts done when the act litigated is being executed are not always res gestae.

In a replevin suit it appeared: —

That on October 10, 1899, plaintiffs and defendant agreed in writing that defendant should cut, haul and drive certain logs; should the logs cut, upon a re-scale for sale, overrun the stumpage sale, defendant was to be paid for such overrun, and all the horses and camping outfit used in the operation, except what should be hired, were to become the property of plaintiffs until the contract should be fulfilled and settlement made. December 9, 1899, the defendant by a bill of sale, with covenants of warranty and ownership, conveyed to the plaintiffs the property replevied, being the horses, etc., above mentioned. Defendant could neither read nor write and signed both instruments by mark.

Plaintiffs claimed title under these two instruments.

The defense was the general issue, non cepit; and by brief statement, property in the defendant and not in the plaintiff; that the bill of sale was obtained of the defendant through fraudulent representation; that the plaintiffs fraudulently, with intent to obtain the defendant's signature to the contract, failed to read or make known to him the provision that the horses and outfit were to become plaintiffs; and, lastly, that both the agreement and the bill of sale were not genuine.

Neither the amount of logs cut by the defendant, his compensation therefor, nor the fact that a balance was due the plaintiffs on the logging operation, was in dispute.

There was a special finding by the jury that the bill of sale was executed by the defendant with full knowledge of its contents.

One of the plaintiffs upon cross-examination was asked the following question : "Didn't you state to Mr. Johnson (the defendant) in Mr. Marsh's office in Old Town, at the time this contract was executed, that if he could bury up any of those logs or put them under the ice and not let the scaler turn in a true account of them, that he could make something out of it?"

*Held ;* that the language supposed by the question does not tend to prove fraud in the inception of the contract, since it does not appear by the exceptions that the supposed words, if spoken, were intended to induce or did induce the defendant to sign the contract; they cannot therefore be regarded as part of the res gestae.

The defendant offered to show by his own testimony the conversation between the parties to the contract, at the time and place of its execution, concerning the provision therein relating to the extra compensation for the overrun of the sale scale.

*Held ;* that the testimony was properly excluded. There is no ambiguity in the clause above referred to. If the conversation offered took place before the contract was signed, it was inadmissible as the contract was afterward reduced to writing; if it took place after the signing, it was clearly inadmissible.

*Held ;* that evidence tending to show the property in some of the horses to be at the date of the writ in persons not parties to this suit was only admissible as bearing upon the defendant's conduct, for since the jury found the bill of sale was executed and delivered by defendant with full knowledge, he is estopped as against the plaintiffs from setting up title at the date of the writ in third parties, not deriving title from the plaintiffs.

*Held ;* also, that, where the only question raised by the plea is that of title, defendant cannot show himself not in possession of the chattels in controversy at the date of the writ, for the purpose of defeating the action.

Exceptions by defendant.    Overruled.

Replevin for several horses.

Besides the general issue of non cepit and the four special grounds of defense mentioned in the opinion, each of which was separately stated and numbered, the first item in the brief statement was as follows : — "First : That at the time when said goods and chattels were replevied by the plaintiffs, the property of the same was not in the

plaintiffs or either of them ; nor was the property of any part thereof in the plaintiffs or either of them."

It appeared by the exceptions that the testimony of Charles J. McLeod, one of the plaintiffs, tended to show that the defendant, at the time of the execution of said contract, agreed to give a bill of sale of the horses at a later time ; and that it was plaintiffs' contention at the trial, that in pursuance of such agreement the bill of sale was given, and that defendant operated under the contract.

The facts appear in the opinion.

*P. H. Gillin and T. B. Towle,* for plaintiffs.

The case shows that testimony was offered that the defendant was to give a bill of sale of the horses owned by him at a later date.

The ruling that the defendant was estopped from showing title in third parties not deriving title from the plaintiffs, for the purpose of defeating the action, was correct for two reasons.

First. Because defendant alleges in his brief statement the title to all the horses to be in himself, and does not anywhere allege, nor was plaintiff apprised that it was claimed that the title to any of the horses replevied was in persons not parties to the suit.

It is well settled that non cepit admits the property in the plaintiffs, and the defendant under that plea is not at liberty to dispute it, and he thereby throws upon the plaintiffs the burden of proving only that he wrongfully took, or wrongfully detained the goods at the place alleged. *Sawyer* v. *Huff,* 25 Maine, 464 ; *Bettinson* v. *Lowery,* 86 Maine, 218. But, on the other hand, if defendant avows the taking and justifies it on the ground that the goods belonged not to plaintiffs but to defendant, and so demands a return, the question then becomes as to the property and right of possession of the plaintiffs ; and this must be shown only as against the defendant. *Lewis* v. *Smart,* 67 Maine, 206.

The defendant having set out that he was the owner of the property, could not under his pleadings introduce evidence tending to show title to some of the horses in third parties.

Second. Defendant is estopped by the covenants in the bill of sale, which the jury found he had executed and delivered with full knowl-

edge of its contents, and wherein he avouched himself to be the true and lawful owner. *Hammond* v. *Woodman*, 41 Maine, 177, 66 Am. Dec. 219; *Temple* v. *Partridge*, 42 Maine, 56; *O. Sheldon Co.* v. *Cooke*, 177 Mass. 441; *Dewey* v. *Field*, 4 Met. 381, 38 Am. Dec. 376; *Mitchell* v. *Ingram*, 38 Alabama, 395; *Bursley* v. *Hamilton*, 15 Pick. 40, 25 Am. Dec. 433; *Dezell* v. *Odell*, 3 Hill, N. Y. 215, 38 Am. Dec. 628; Greenleaf on Evidence, 15th Ed. Vol. I, § 22 and § 23; Am. & Eng. Enc. of Law, Vol. 3, page 828; *Longfellow* v. *Longfellow*, 61 Maine, 590; Parsons on Contracts, 8th Ed. Vol. II, *788.

Evidence of the declarations and conversations at the time of the execution of the contract were properly excluded as being immaterial, irrelevant and not germane to the issue; because it appears admittedly that neither the amount of logs cut by the defendant, his compensation therefor, nor the fact that a balance was due plaintiffs from defendant on the logging operation, was in dispute at the trial.

Again, the evidence offered which was excluded, has no tendency to prove fraud on the part of anybody.

If there was any fraud, the doctrine of pari delicto applies and the defendant was as much a party to it as the plaintiffs. He cannot, therefore, now assert his fraud and claim as a right any advantage resulting from it. *Taylor* v. *Weld*, 5 Mass. 108; *Ayers* v. *Hewett*, 19 Maine, 281; *Nichols* v. *Patten*, 18 Maine, 231, 36 Am. Dec. 713; Parsons on Contracts, Vol. II, 8th Ed. *782, *783.

*Hugo Clark and H. L. Fairbanks*, for defendant.

The first item in the brief statement is a pure negative plea which puts the burden of proof on plaintiff, and is sustained as a perfect defense by any proof which shows the property not in plaintiff. Its truth is therefore established by showing title in a third party. *Johnson* v. *Neale*, 6 Allen, 227, 228; *Dillingham* v. *Smith*, 30 Maine, 370, 382.

The defendant was entitled to put in as many defenses as he elected and had all the rights incident to each.

The fact that some one plea put in might carry an implied admission, if interposed alone and another put the plaintiff to his proof of the same point, must result to the advantage of the defendant, not

plaintiff; so far as the proof required is concerned.    R. S., c. 82, §
22 ; *Nye* v. *Spencer*, 41 Maine, 272 ; *Moore* v. *Knowles*, 65 Maine,
493.

The bill of sale, if given at all, was a further assurance of the con-
tract and a part of the same transaction, as shown by plaintiff's own
testimony.    Any fraud or illegality of consideration in the contract,
then, extended to the bill of sale.    *Prentiss* v. *Russ*, 16 Maine, 30,
32, 33 Am. Dec. 631.    Hence the special finding was immaterial.

The clause in the contract providing for extra compensation for
the over-run of sale scale, in view of the loss of logs incident to driv-
ing, and in the light of the decisions in *Cushman* v. *Holyoke*, 34
Maine, 289, and *Putnam* v. *White*, 76 Maine, 551, foreshadows an
illegal design against the land owner to purloin logs, to such an
extent as to call for explanation as to its presence in the contract.
For, unless the object of this clause can be shown by parol testimony,
it will be only in cases of such illegalities as the parties are weak
enough to expose in their writings that the court can prevent a party
from obtaining the fruits of an unlawful bargain.    The parties were
in pari delicto, and it is well settled in this state that in such cases
the law will afford no relief.    *Concord* v. *Delaney*, 58 Maine, 309 ;
*Ellsworth* v. *Mitchell*, 31 Maine, 247, 249 ; *Russell* v. *DeGrand*, 15
Mass. 35, 37.

The ground is not that defendant has superior claims or is entitled
to peculiar favor, but that plaintiff's are not entitled to enforce at
law an unlawful contract.    *Wheeler* v. *Russell*, 17 Mass. 257, 279 ;
Parsons on Contracts, 8th Ed. Vol. II, (bottom page) 869 ; *Morris* v.
*Telegraph Co.*, 94 Maine, 423.

The excluded declaration was admissible for four reasons : (1)
because parol testimony is admissible in a case where fraud is charged
and plead in defense; (2) to impeach the plaintiff; (3) as part of the
res gestae; (4) because it was proper cross-examination of the plain-
tiff, since he went into the conversation and by evidence outside the
contract showed the oral agreement to give a bill of sale later.
*Williams* v. *Gilman*, 71 Maine, 21 ; *Oakland Ice Co.* v. *Maxcy*, 74
Maine, 294, 301 ; Wharton on Evidence, 2d Ed. Vol. I, page 476.

Fraud is distinctly plead and charged in defense, therefore the con-

versation of the parties at the time and place of the execution of the contract are admissible; *not to vary or modify the contract,* but to show that it had no legal existence.

Fraud being alleged, a wide range is given to establish it. "Human affairs consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each dates its birth to some preceding circumstances and in its turn becomes the prolific parent of others . . . . ." 1 Greenleaf on Evidence, 15th Ed. § 108; 1st Ed. Am. & Eng. Enc. of Law, Vol. 4, page 863; *Am. Fur Co.* v. *U. S.* 2 Peters, 358; *State* v. *Soper,* 16 Maine, 293, 33 Am. Dec. 665; *Stewart* v. *Hanson,* 35 Maine, 506, 507; *State* v. *Walker,* 77 Maine, 488, 490; *State* v. *Maddox,* 92 Maine, 348; 1st Ed. Am. & Eng. Enc. of Law, Vol. 21, pages 99, 100; ib. Vol. 4, page 865; *Deer Isle* v. *Winterport,* 87 Maine, 37, 44; Wharton on Evidence, 2nd Ed., Vol. I, page 35, note 1; Jones on Evidence, Vol. 2, § 440; *Holley* v. *Young,* 66 Maine, 520, 523.

A replevin writ does not authorize a search. The property must be taken from the defendant. *Ramsdell* v. *Buswell,* 54 Maine, 546.

Both the defense that the property was not in possession of the defendant at the date of the writ, and the alleged defense of the illegality of subject matter of the contract,— the claimed design to purloin the logs, sought to be shown,— can be taken advantage of under the general issue without being specially plead. *Springfield Bank* v. *Merrick,* 14 Mass. 321, 322; *Wheeler* v. *Russell,* 17 Mass. 257.

Such a defense "is one outside the real merits of the case, and although an issue might possibly be made on it, yet . . . . it need not necessarily be pleaded. But if it comes to the knowledge of the court in any proper manner it will refuse longer to entertain the proceedings." It is like collusion in an action of divorce or champerty in the assignment to plaintiff of the claim in suit. 1st Ed. Am. & Eng. Enc. of Law, Vol. 3, page 87, note 1, and cases there cited.

There was no inconsistency in the defenses. And, besides, there were horses enough so that a return of some might have been ordered

under each defense.   Cobby on Replevin, § 565.   *Gaynor* v. *Blewitt,* 69 Wis. 582, 34 N. W. Rep. 725.

SITTING:   WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOG-LER, PEABODY, JJ.

FOGLER, J.   This is an action of replevin.   The verdict was for the plaintiff and the defendant excepts to the rulings of the presiding justice in four instances.

The following facts appear by the exceptions :   October 10, 1899, by an agreement in writing by and between the plaintiff and the defendant, the defendant agreed to cut, haul and drive into the main Penobscot river, certain spruce, pine and cedar logs to the amount of one million feet or more, at the agreed price of six dollars and fifty cents per thousand feet for spruce and pine, and seven dollars and fifty cents per thousand feet for cedar.   It was also stipulated in the agreement that should the logs cut under the agreement, upon a re-scale for sale, over-run the stumpage scale, the defendant should be paid for such over-run seven dollars and fifty cents per thousand feet for spruce and pine, and eight dollars and fifty cents per thousand feet for cedar.   By the contract the defendant agreed that all the horses and camping outfit used in carrying on the operations, except what should be hired, should become the property of the plaintiffs until the contract should be fulfilled and settlement made.

December 9, 1899, the defendant by a bill of sale by him signed, conveyed to the plaintiffs the property replévied in this suit, consisting of ten horses "with harnesses, sleds and hitch and rigging, all the camp outfit now at Elm Stream."

The defendant pleaded the general issue, non cepit, and by brief statement that the property of the goods and chattels replevied was, at the time they were replevied, in the defendant, and not in the plaintiff ; that the bill of sale above mentioned was obtained of the defendant by fraud through a certain false and fraudulent represen-tation made by the plaintiff, McLeod, to the defendant; that the provision in the contract that his horses and outfit should become the property of the plaintiff was not read or made known to him at the

time he signed the contract, and that the plaintiff fraudulently, with the intent to obtain the defendant's signature to the contract, failed and omitted to make such provision known to him, by reason whereof the said provision is not genuine, but null and void; and, lastly that both the agreement and the bill of sale are not genuine.

The exceptions state that the defendant could neither read nor write and he signed both instruments by mark.

Neither the amount of logs cut by the defendant, his compensation therefor, nor the fact that a balance was due the plaintiff from the defendant on the logging operations was in dispute at the trial. There was a special finding by the jury that the bill of sale was executed by the defendant with full knowledge of its contents.

We will now proceed to examine the exceptions seriatim.

1. The plaintiff, McLeod, upon cross-examination, was asked by the defendant's counsel the following question, "Didn't you state to Mr. Johnson (the defendant) in Mr. Marsh's office in Oldtown at the time this contract was executed, that if he could bury up any of those logs or put them under the ice and not let the scaler turn in a true account of them, that he could make something out of it?" The presiding justice excluded the question, to which ruling the defendant excepts. We think the ruling was correct. The contract between the parties was in writing signed by them. Its terms are clear and unambiguous. In the absence of fraud both parties are bound by the writing. The duties and rights of the defendant are fully expressed in the contract. No words spoken by the plaintiff could affect his duties or his rights. The language supposed by the question does not tend to prove fraud in the inception of the contract. It does not appear by the exceptions that the supposed words, if spoken, were intended to induce or did induce the defendant to sign the contract. If spoken it was a mere suggestion upon which the defendant might, or might not act, as he saw fit. It is contended by the learned counsel for the defendant, that as the supposed words were spoken at the time the contract was executed, they are a part of the res gestae and therefore admissible. Words spoken or acts done when the act litigated is being executed are not always res gestae.

In *Carter* v. *Buchanan*, 3 Ga. 513, the res gestae is defined to

mean the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it and serve to illustrate its character.

Mr. Wharton says, " The res gestae may, therefore, be defined as those circumstances which are the undesigned incidents of a particular litigated act, which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander. They may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are a part of the immediate preparations for, or emanations of such act, and are not produced by the calculated policy of the actors." 1 Wharton on Evidence, § 259.

In the light of the foregoing definition, the words supposed by the question to have been spoken by the plaintiff cannot be regarded as pars rei gestae.

II. The defendant offered to show by his own testimony the conversation between the parties to the contract, at the time and place of its execution, concerning the provisions therein relating to extra compensation to the defendant for any amount that the sale scale of the logs should over-run the stumpage scale. The defendant's counsel contended that the testimony was admissible as a part of the res gestae. The presiding justice ruled that the testimony was inadmissible and excluded it, to which ruling the defendant excepts.

The testimony was properly excluded for the reasons given with reference to the first exceptions. There is no ambiguity in the clause above referred to. If the conversation offered in testimony took place before the contract was signed, it was inadmissible as the contract was afterwards reduced to writing; if it took place after the signing it was clearly inadmissible.

III. Evidence was introduced by the defendant tending to show the property in some of the horses described in the bill of sale, to be at the date of the writ in persons not parties to this suit.

Counsel for defendant contended that under the first count in the brief statement property of some of the chattels in controversy could be shown in persons not party to the suit, for the purpose of defeating recovery thereof by the plaintiff.

The presiding justice ruled that such evidence was only admissible as bearing upon the defendant's conduct, and, that if the jury should find that the bill of sale was executed and delivered by the defendant with full knowledge of its contents, he would be estopped in this suit from setting up title in third parties at the date of the writ not deriving title from the plaintiffs.

To this ruling exceptions were taken by the defendant and allowed.

The defendant by his pleas alleges that, at the time when the chattels were replevied, they were the property of the defendant and not the property of the plaintiff. The burden was upon the plaintiffs to prove property in themselves.

To prove their title the plaintiffs introduce a bill of sale with a covenant of warranty of title from the defendant to themselves, and in which the defendant avouches himself to be the true and lawful owner of the chattels.

The jury found specially that the bill of sale was executed by the defendant with full knowledge of its contents.

The defendant is estopped as against the plaintiffs by his bill of sale and covenants therein contained from setting up title in the property or any part of it in a third party, unless the title of the third party be derived from the plaintiffs. 1 Greenl. on Ev. § 24 ; *Hammond* v. *Woodman,* 41 Maine, 177, 66 Am. Dec. 219 ; *Temple* v. *Partridge,* 42 Maine, 56 ; *Dewey* v. *Field,* 4 Met. 381, 38 Am. Dec. 376 ; *Bursley* v. *Hamilton,* 15 Pick. 40, 25 Am. Dec. 433 ; *O. Sheldon Co.* v. *Cooke,* 177 Mass. 441 ; *Dezell* v. *Odell,* 3 Hill, 215, 38 Am. Dec. 628.

IV. The defendant excepts to a ruling of the presiding justice that, under the pleadings, the defendant could not show himself not in possession of the chattels in controversy at the date of the writ for the purpose of defeating the action. The exceptions cannot be sustained, as the issue involved in the ruling is not raised by the plea.

The only question regarding the property raised by the plea is that of title.

*Exceptions overruled.     Judgment on the verdict.*