THOMAS M. HOYT *vs.* ASA H. TAPLEY.

Aroostook.    Opinion April 7, 1922.

*The question of the meaning of a written contract is ordinarily one of law and not of fact. If the place of delivery of articles contracted for is not stipulated in the contract, the seller must ascertain where buyer will receive them. In absence of any agreement or direction as to how goods are to be sent or shipped, the seller should deliver them in good condition to a common carrier in the usual and common course of business. In case of a breach of the contract, the market value of the goods on the last day on which delivery may be made under the contract is admissible. When a contract can be substantially executed, and its essential purpose accomplished, performance is not excused.*

In the instant case, what the meaning, intention and understanding of the parties was, was not a question of fact to be determined by the jury, but a question of law for the court. The question of the meaning of a written contract is ordinarily one of law for the court and not one of fact for the jury.

If no place is appointed for delivery of articles contracted for, the debtor must ascertain where the creditor will receive them. Readiness to deliver is not sufficient. And if there has been no direction or agreement as to the mode or manner in which the goods are to be sent, then the seller should deliver the same in good condition to a common carrier in the usual and common course of business.

The defendant under the contract had the whole month of January, and the entire month of February, in which to deliver the potatoes agreed to be delivered in those months, and there could be no breach of the contract for January deliveries until the last day of January. The market value on that day was admissible and important; the market value in the early days of January was unimportant and inadmissible.

The rule that if a thing becomes physically impossible by the act of God, performance.is excused, does not prevail, when the essential purpose of the contract may be accomplished. If the intention of the parties can be substantially, though not literally, executed, performance is not excused.

On exceptions and motion. This is an action to recover damages resulting from an alleged breach· of a written contract, wherein it was stipulated that defendant sold and agreed to deliver to plaintiff forty-five hundred barrels of Spaulding Rose potatoes, and forty-five hundred barrels of Green Mountain potatoes, thirty cars in all, fifteen cars of both kinds to be shipped in each of the months of January, 1920, and February, 1920, for which plaintiff was to pay $2.65 per hundred weight, delivered. At the time of the execution of the contract, plaintiff paid defendant three thousand dollars as stipulated in the contract.

No potatoes were ever delivered under the contract and the plaintiff in this action seeks ·to recover the difference between the contract price and the market value on the last day of January of such potatoes as were to be delivered in January, and also the difference between the contract price and the market value on the last day of February of such potatoes as were to be delivered in February, and the three thousand dollars advanced on the purchase price at time of execution of the contract. Defendant pleaded the general issue, and the case was tried to a jury, and a verdict for $18,300 was returned for the plaintiff. Defendant took exceptions ·to certain rulings, instructions, and refusal to instruct of the presiding Justice, and also filed a motion for a new trial. Motion overruled. Exceptions overruled.

The case is fully stated in the opinion.

*Powers & Guild* for plaintiff.

*C. F. Small, A. F. Cook and A. S. Crawford, Jr.,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, JJ.

HANSON, J.  This is an action on the case to recover damages growing out of an alleged breach of a written contract for the sale and delivery of nine thousand barrels of potatoes.

The jury returned a verdict for the plaintiff in the sum of $18,300 and the case is before the court on general motion and exceptions by the defendant.

The contract reads as follows:  "MEMORANDUM OF AGREE-MENT made and entered into this Seventeenth day of October, 1919, by and between A. H. Tapley of Fort Fairfield in the state of Maine of the first part and T. M. Hoyt of Presque Isle, in the state of Maine of the second part:

"Party of the first part sells and agrees to deliver to party of the second part 4500 barrels Spaulding Rose and 4500 barrels Green Mountain, all to be U. S. Grade No. 1, said potatoes to be put up in two-bushel sacks.

"Party of the second part agrees to accept said potatoes and pay the sum of $2.65 hundred weight delivered Boston rate of freight, which is to be paid in the manner following:  $100.00 per car as a deposit upon the signing of this contract, balance upon receipt of arrival draft attached to bill of lading.

"It is further agreed that the deposit of $100.00 per car shall be equally applied to each car when loaded.

"Party of the first part is to ship said potatoes in shipments equally distributed, fifteen cars of both varieties during the month of January, 1920, and fifteen cars of both varieties during the month of February, 1920.

"The obligation of the party of the first part to deliver is contingent upon strikes, embargoes, unavoidable accidents and weather conditions beyond his control.

"In witness whereof the said parties have hereunto set their hands and seals the day and year above written.

A. H. TAPLEY<br>T. M. HOYT."

An assignment and reassignment of the agreement follow:

"For one dollar and other valuable considerations, I hereby assign all rights and interest in above contract to T. E. Holt.

T. M. Hoyt.

Dated Dec. 15, 1919.

"Fort Fairfield, Maine, January 20, 1920.

For valuable consideration this day received by me, the receipt of which is hereby acknowledged, I hereby assign and convey all my right, title and interest in and to the above contract to T. M. Hoyt.

T. E. Holt."

It was admitted that the plaintiff had paid the defendant $3,000 on account of the purchase price of the potatoes, and that the defendant had retained possession of that sum, and had delivered no part of the potatoes bargained for by the plaintiff.

### The Exceptions.

Exception 1. The defendant sought to show by cross-examination of the plaintiff, and the direct examination of the defendant, that F. W. Higgins, who made the contract as the agent of the plaintiff, prior to reducing the contract to writing had agreed with the defendant that the plaintiff would furnish the cars in which the potatoes were to be shipped. The testimony was properly excluded. When the parties reduce their contract to writing the law presumes that the writing contains the whole agreement. *Chaplin* v. *Gerald*, 104 Maine, 187. In *Vumbaca* v. *West*, 107 Maine, 130, cited by the defendant, the agreement was on its face incomplete. An essential stipulation was omitted. The evidence did not contradict the writing. It merely supplied the omission, and the court held that it fell within the exception to the parol evidence rule, and within the doctrine stated in *Neal* v. *Flint*, 88 Maine, 83, and *Gould* v. *Boston Excelsior Co.*, infra.

These exceptions serve to emphasize the rule that the law presumes that the writing contains the whole agreement between the parties.

Exception 2. The defendant contended that it was for the jury to determine, as a question of fact, what the parties meant, understood and intended by the clause in the contract which provided:

"Party of the first part is to ship said potatoes in shipments equally distributed, fifteen cars of both varieties during the month of January, 1920, and fifteen cars of both varieties during the month of February, 1920." Defendant also objected to the admission of testimony as to the market value of potatoes at the end of the month of January, and objected to the exclusion of testimony of the market value of potatoes during the early days of January.

As to the first objection. What the meaning, intention and understanding of the parties was, was not a question of fact to be determined by the jury, but a question of law for the court. The question of the meaning of a written contract is ordinarily one of law for the court and not one of fact for the jury. 9 Cyc., 591; *Guptil* v. *Damon*, 42 Maine, 271; *Woodman* v. *Chesley*, 39 Maine, 45. Whenever a paper can be understood from its own words, its interpretation is a question of law for the court. Wills, deeds and other contracts usually fall under this classification. In such cases, the meaning of the instrument, the promise it makes, the duty or obligation it imposes, is a question of law for the court. *State* v. *Patterson*, 68 Maine, 473; *Cocheco Bank* v. *Berry*, 52 Maine, 302; *Herbert* v. *Ford*, 33 Maine, 93; *Nash* v. *Drisko*, 51 Maine, 418. The agreement speaks for itself. It was complete in itself, and expressed the full duty and liability of each party thereto. There was an agreement to sell and deliver the potatoes to the plaintiff by defendant. The plaintiff agreed to receive and pay for the same. The contention of the defendant that the plaintiff was bound to furnish cars, is negatived by the agreement. The manner of delivery, the choice of days of delivery and the performance in good faith by the defendant of his part of the agreement being left, within the limitations of the contract as to time, in the defendant's discretion. The agreement includes another term of striking significance, viz.:—Party of the first part "is to ship said potatoes." He agreed to act, not to await action of the plaintiff. If there had been an honest doubt as to the time, place, or fact of delivery, the defendant was charged with the duty of solving the same by communicating with the plaintiff. But having many opportunities he failed to mention the same to the plaintiff. If no place is appointed for delivery of articles contracted for, the debtor must ascertain where the creditor will receive. Readiness to deliver is not sufficient. *Lincoln* v. *Gallagher*, 79 Maine, 190. And if there has been

no direction or agreement as to the mode or manner in which the goods are to be sent, then the seller should deliver the same in good condition to á common carrier in the usual and common course of business. Benjamin on Sales, Vol. 2, 687; *Maxwell* v. *Brown,* 39 Maine, 98. In *Hiram Curtiss* v. *Theodore P. Howell,* Applt., 39 N. Y., 211, it was held that a contract to deliver a thousand tons of bark per year for five years, commencing on the first day of September, 1854, is performed by delivering a thousand tons within each year, that is, the contractor has the entire year within which to furnish the one thousand tons, and further, "where, from the language of the contract, there can be no uncertainty as to the true meaning of its terms, it is not competent to give evidence to show that a different meaning was intended."

There is no testimony in the case from any witness that the defendant ever claimed before the trial that the plaintiff was to furnish cars. There were several demands made by the plaintiff and Mr. Holt, the assignee, for delivery of the potatoes, and conversations are given by and between the parties during the continuance of the agreement, relating to the delivery, but the defendant did not at any time raise the question, or ask the plaintiff to provide cars. He gave another reason for not delivering, which was that he "didn't have the potatoes and couldn't afford to buy them." As to the admission of testimony relating to the market value of potatoes at the end of the month of January and the exclusion of testimony covering the early days of January upon the same subject, we are of opinion that both rulings were correct. The law is well settled supporting the rulings. The defendant under the contract had the whole month of January, and the entire month of February, in which to deliver the potatoes agreed to be delivered in those months, and there could be no breach of the contract for January deliveries until the last day of January. The market value on that day was admissible and important; the market value in the early days of January was unimportant and inadmissible. *Varney* v. *McCluskey,* 114 Maine, 205, 207. Moreover, its exclusion was not, and could not be, prejudicial to defendant's rights. Benjamin on Sales, 7th Ed. Par. 685; Williston on Contracts, Par. 857; 13 C. J., 682; *Curtiss* v. *Howell,* 39 N. Y., 211. As to the assignment to Mr. Holt, it is clear for the reasons already stated that the assignment and reassignment having

occurred before the breach of the agreement, the relative rights of the parties did not change, but were the same as of the date of the agreement.

Exception 3, raised the same question as Exception 2, as to the market price of potatoes in the first part of January.

Exception 4. E. W. Russ, a witness for the defendant, was asked in cross-examination, "if it would be reasonably possible to go out and buy 4500 barrels of potatoes within two or three days, the last two or three days in January, or the first two or three days of February." He answered, under defendant's objection: "I should say it would be possible to buy them, but not get them delivered within that time." This answer was in harmony with other similar testimony given without objection or exception, and it is not perceived where the defendant is prejudiced thereby.

Exception 5 related to the assignment by the plaintiff to Mr. Holt, the defendant requesting instructions as to the rights of Mr. Holt in view of a finding by the jury that a breach occurred while Mr. Holt held the agreement. The presiding Justice very properly refused so to instruct, holding as heretofore mentioned that the breach in the case occurred on the last day of the months in question, Mr. Holt's reassignment being on January 20th, 1920.

Exception 6. The defendant excepted to the following instruction of the court in his charge to the jury:

"Now, so far as the contract is concerned, as to what the contract means, that, gentlemen, is a question of law; the construction of the contract is for the court; so whatever I instruct you as to the meaning of the terms of this contract you must accept from the court as final." The law thus stated is too well settled for the defendant to take anything by this exception.

Exception 7 may be stated from the bill:

"The court instructed the jury as follows:

'Neither can I instruct you that the failure to deliver during the first part of January, up to the 20th even, was a breach of the contract as to the number of cars that were to be delivered during the month of January. The defendant in this case would have fulfilled his contract if he had delivered to the plaintiff the 4500 barrels of potatoes after the assignment back, or the re-assignment of this contract back to the plaintiff. If he had delivered them between that time and the first of February I instruct you it would have

been a sufficient compliance with the terms of the contract so he would not have been liable for damages for failure to deliver during the early part of January'." Defendant's counsel in his brief says: "To this unqualified instruction, the defendant seasonably excepted, because inconsistent with his theory that the construction of the contract, in respect to time of delivery of the potatoes, was a question for the jury to determine upon all the evidence in the case." As has been seen, the theory of the defendant is not in harmony with the settled law; the instruction excepted to, states the law.

Exception 8. The defendant excepted to the following instruction: "But the defendant says further that even though he was bound to deliver under the contract, that by reason of the excessive weather conditions that existed, particularly during the month of February of last year, that he should be relieved from a part of the damages, or such part as might have been due to an inability to obtain cars during that month. And upon that point, gentlemen, I instruct you that in entering into the contract and making this stipulation in it, it does not mean that he would be excused from delivery by reason of ordinary weather conditions that he might have reasonably expected would occur, because in entering into a contract he must take into account the ordinary conditions that might exist during the winter season. But it would be true that under such provisions, if there came such an excessive fall of snow or any other weather conditions, whether rain or snow, as to entirely stop railroad traffic during the month of February, as an illustration, and for that reason he was unable to obtain cars, or even get them out through the inability of the railroad to function at all by reason of the weather conditions, why, that would be an excuse because that is an unusual condition, and it would be weather conditions he could not anticipate and over which he would have no control. But it is a question of fact, gentlemen, for you to determine whether, from the conditions that existed in this case, the defendant was prevented, by reason of any weather conditions that existed, such as you have heard them described here during the month of February last, from the shipment of cars. Of course, if the defendant had decided that he would not undertake to fulfill the contract for any other reason, because of the excessive price of potatoes, that he could not fulfill it, then there is no preventing the fulfilling of it by reason of any weather conditions. But if

you should find that there were excessive weather conditions such as I have related to you, and that they accounted in part for the failure to fulfill it, which he would have otherwise made, you may properly deduct those from the damages which the plaintiff has suffered."

The instruction was correct and the defendant can take nothing by this exception.

Exception 9. Defendant excepted to an instruction as to the assessment of damages for the January breach of the contract. The presiding Justice, on the announcement that defendant desired to save his exception, modified the instruction, and exception was not taken thereto. In any event, neither the original instruction nor the modification was harmful to the defendant.

The motion. In view of the payment of $3,000 mentioned, the verdict must necessarily have been for the plaintiff. Is the verdict against the law, the evidence, and weight of evidence, and are the damages excessive? The questions raised are substantially the same as those already considered under the exceptions. The defendant contended that he was not liable under his agreement, (1) because the plaintiff would not furnish cars; (2) because of weather conditions, and in his brief contends further in support of his motion that the damages are excessive, and not based upon the true market value.

As to the first contention, the record clearly shows that it was his duty and not the duty of the plaintiff to furnish cars. The last provision in the agreement makes this clear. "The obligation of the party of the first part to deliver," was "contingent upon strikes, embargoes, unavoidable accidents and weather conditions beyond his control," and not upon the plaintiff's liability to furnish cars. It is clear, too, that the weather conditions were not such as to materially interfere with the performance of the contract on the part of the defendant, and the fact that he made no attempt to deliver the potatoes in either month disposes of any claim that the weather conditions excused performance. It appears that he shipped twenty or more carloads to other parties notwithstanding the weather. The jury would be justified in finding that weather conditions were not such as to justify or excuse performance under the circumstances of this case. The rule that if a thing becomes physically impossible by the act of God, performance is excused,

does not prevail, when the essential purpose of the contract may be accomplished. If the intention of the parties can be substantially, though not literally, executed, performance is not excused. *White* v. *Adeline H. Mann*, Executrix, 26 Maine, 361.

There was much testimony as to market value of potatoes, and nearly every witness gave expert testimony on the subject, as they were potato dealers and competent to testify. The defendant testified at length as to market value, and computation discloses that the verdict of the jury is based upon the defendant's testimony as to the market value of potatoes. A careful examination of the testimony discloses this, and that the testimony is overwhelming in favor of the plaintiff's contention.

> *Motion overruled.*
> *Exceptions overruled.*