KENNETH EVERETT
*vs.*
LESTER E. RAND

Aroostook.   Opinion, April 5, 1957.

*Albert M. Stevens,* for plaintiff.

*Walter S. Sage,*
*Gerald E. Rudman,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WILLIAMSON, C. J.   This is an action by the seller against the named buyer for damages from breach of a written contract for sale of potatoes. A justice of the Superior Court hearing the case without a jury and under reservation of the right to except as to matters of law found for the plaintiff in the amount of $4280. Exceptions by the defendant are overruled.

Liability turns on whether the defendant was a buyer or a broker in the transaction with the plaintiff. Exceptions touching damages were not pressed or argued, and are considered waived.

The principles governing our consideration of jury-waived cases are well defined. Only issues of law are reached by the exceptions. "(The presiding justice) is the exclusive judge of the credibility of witnesses and the weight of evidence, and only when he finds facts without evidence or contrary to the only conclusion which may be drawn from the evidence is there any error of law." *Sanfacon* v. *Gagnon,* 132 Me. 111, 113, 167 A. 695. "The findings of fact of a single justice are final and binding if supported by any credible evidence." *Green Acre Baha'i Institute* v. *Eliot,* 150 Me. 350, 353, 110 A. (2nd) 581.

The justice filed a memorandum setting forth certain findings and rulings. Apart therefrom, to use the words of the *Sanfacon* case, at page 113, *supra,* "It must be assumed that he found for the (plaintiff) upon all issues of fact necessarily involved."

In brief, and without detail, the justice could have found the following:

On August 27, 1952 the plaintiff and the defendant entered into a written contract prepared by the defendant on a printed form supplied by him with provisions of interest stated below:

> "L. E. RAND COMPANY
> Potato Brokers & Shippers
>
> AROOSTOOK COUNTY
> SEED - POTATOES - TABLE
> FORT FAIRFIELD, ~MAINE
>
> STANDARD CONFIRMATION OF SALE
>
> \* \* \* \* \* \* \* \* \*

Sold to L E Rand Co. Fort Fairfield, Maine
   (Buyer)      (P. O. Address)

Ship to Kroemer Farms, Inc.

Sold for account of Kenneth Everett, Fort Fairfield, Maine
       (Seller)       (P. O. Address)

Shipment from          Maine
                (Shipping Station or District)

Time of Shipment     March 1953; Buyer's option, subject
                     availability of cars

Sale made    (F.O.B. or Delivered) fob net on a del basis
             we furnish sax pay for cert tags and heat if
             needed

Terms, How Payable    as usual

Special Agreement, if any

   (It is understood, unless otherwise stated herein, this
   sale is made in contemplation of and subject to the
   Standard Rules and Definitions of Trade Terms printed
   on the back hereof.)

QUANTITY      COMMODITY AND SPECIFICATIONS      PRICE

   Four (4) cars each containing 450-100# Certified
   Katahdins nusax tagged at $6.50 bbl.

   Note:   This is a divisible contract; each car shall be
   regarded as a distinct and separate transaction.
                 (Signed)   L. E. Rand Co. By L. E. R.
                                           Buyer

                 (Signed)   Kenneth Everett
                                         Seller

             By ............................
                      Broker or Salesman

   I hereby certify that I am authorized by the seller named
above, as his Broker or Salesman, to fill out this Standard
Confirmation of Sale and sign and authenticate the same in
his behalf."
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

   On August 28, 1952 the defendant as the seller and Kroe-
mer Farms, Inc. as the buyer executed a written contract
prepared by the defendant on a printed form like that used
in the plaintiff-defendant contract. The contract covered
the sale of a like quantity of potatoes at a price per hundred-
weight reflecting an increase said to be a normal brokerage

commission above the barrel price in the plaintiff-defendant contract.

In March and early April 1953 two of the four cars were "ordered in" by the defendant, delivered to him, and shipped under his instructions to Kroemer Farms, Inc. The defendant made no request or demand for the remaining potatoes under the contract. The plaintiff testified in part on this point as follows:

> "Along the latter part of April I talked with Rand and he explained to me he says 'I can't take those other two cars. The two cars I have shipped I shipped to a fellow by the name of Kroemer down in Milo, Kroemer has gone broke and he can't pay me for two cars so I can't take the other two cars.'"

At about the same time the plaintiff went to Milo to ascertain the financial condition of Kroemer Farms, Inc. The plaintiff was aware that the payments received by him from the defendant, with the exception of the first payment of $800, or $200 per car, came from payments made by Kroemer Farms, Inc. to the defendant. The plaintiff, in making his contract with defendant, was aware that the defendant would dispose of the potatoes, or, from the plaintiff's point of view, would sell them.

Under date August 11, 1953 in an indenture, so-called, the plaintiff assigned to the defendant for collection all claims against Kroemer Farms, Inc. in receivership.

The assignment reads in part:

> "WHEREAS, the Assignee is a potato broker who, on behalf of the Assignor, contracted with Kroemer Farms, Inc. for the sale of potatoes owned by the Assignor, in accordance with the contract attached hereto; and

> "WHEREAS, Kroemer Farms, Inc. is now in the hands of receivers, and there is $6034.54 due said Assignor; and

> WHEREAS, a proof of claim of this contractual debt must be filed with the receivers, the Assignor has agreed to assign this claim to the Assignee upon the trusts hereinafter declared"

Sums paid by the receivers to the defendant were in turn paid to the plaintiff and are credited to the former in this action.

Returning to August 27, 1952, we find a written contract, clear and plain, under which the plaintiff, named as the seller, sold potatoes for future delivery to the defendant, named as the buyer. The instrument signed by these parties unquestionably constituted a complete integration of their agreement, with the exception of the terms of payment "as usual" about which no question has arisen.

> "If, however, the written contract is not 'of a skeleton nature' and is not 'apparently incomplete' but is on its face complete, it presumptively contains the whole agreement and the presumption can be overcome only by clear, strong and convincing evidence."

*Johnson* v. *Burnham,* 120 Me. 491, 493, 115 A. 261.

The agreements and understandings of the parties were thus merged in the writing. *McLeod* v. *Johnson,* 96 Me. 271, 52 A. 760; *Johnson* v. *Burnham, supra.* "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." Restatement, Contracts Sec. 228, 232.

The parol evidence rule therefore became applicable. *Card* v. *Nickerson,* 150 Me. 89, 104 A. (2nd) 427; *Bartlett* v. *Newton,* 148 Me. 279, 92 A. (2nd) 611; *Hoyt* v. *Tapley,* 121 Me. 239, 116 A. 559; 32 C. J. S., Evidence Sec. 901, 959, at p. 896; 20 Am. Jur., Evidence Sec. 1091; Restatement, Contracts Sec. 237 *et seq.*

> "It is a rule of substantive law which, when applicable, defines the limits of a contract. It fixes the subject matter for interpretation, though not itself a rule of interpretation."

> 3 Williston, Contracts (rev. ed.) Sec. 631. See also Sec. 633.

There is, it may be noted, no claim of fraud, error, or mistake in arriving at the words used in the contract. The defendant does not seek to reform the contract in equity. *Johnson* v. *Burnham, supra.* If plain words are to receive their plain meaning, the defendant was a buyer, not a broker, and the plaintiff without more would prevail.

The defendant attacks the plain meaning of the contract and vigorously endeavors to show that the defendant was a broker, not a buyer, and Kroemer Farms, Inc. was the buyer under the contract with the plaintiff. This interpretation he asserts in substance was established; first, through an operative usage, and second, by a written instrument later discussed referring to the defendant as a broker.

The defendant offered evidence to show a usage in Aroostook County at the time the contract in question was executed for a broker to sign as the buyer, without liability on his part. In brief, the usage, so it was urged, was that the word "buyer" on such a contract did not mean "buyer" at all, but "broker." The evidence on the point was contradictory in several respects, and taken for the defendant did not compel the conclusion that there was in fact such a usage. It is sufficient to say that in large measure the witnesses went no further than to say in effect that knowing the parties they considered the contract was a brokerage and not a sales contract.

The justice, in the memorandum, said:

> "The evidence was admitted 'under offer of proof' to enable the Court to determine the ruling. I find that 1) the parole evidence rule is violated by the

> proffered evidence and that it is therefore not admissible for consideration in the case and 2) even if taken as face value the proffered evidence fails to establish a usage so uniform, general and of such long standing that plaintiff might be presumed to know it (and therefore enter into this contract with the usage in mind) . . . Witnesses presented as experts in the potato industry were not in agreement on the 'usage' and apart from such alleged usage no evidence charged the plaintiff with knowledge of it."

Strictly, the evidence was not inadmissible under the parol evidence rule. Usage may be shown to establish the intention of the parties. The question here was whether the evidence compelled the finding of the usage asserted by the defendant. The justice, as we read the memorandum, in effect ruled that the usage was not established as a matter of law, taking the evidence most favorably for the defendant, and further found that no usage was established as a fact. In terms of a jury trial it seems as a judge he would not have permitted the evidence to go to the jury, or if it had reached the jury, as a fact-finder, he would have found no usage.

The defendant must accept the finding under the *Sanfacon* rule, *supra*. Indeed, as a matter of law the usage urged, assuming it was uniform, and known or presumed to be known to the parties, could not be given effect. Such a usage would be repugnant to the contract and further, to say that by usage "buyer" meant "broker" would create an ambiguity where none existed. A written contract would have little force as an integration of an agreement if plain words could be so twisted in meaning. *Randall* v. *Smith*, 63 Me. 105; *Marshall* v. *Perry*, 67 Me. 78; *Norton* v. *University of Maine*, 106 Me. 436, 76 A. 912; *Gooding* v. *Northwestern Mutual Life Ins. Co.*, 110 Me. 69, 74, 85 A. 391.

The defendant must fail in his second main argument to the effect that the assignment of August 1953 compels the

interpretation of the plaintiff-defendant contract to be between seller and his broker and not between seller and buyer.

First, as we have seen, the written contract was the integration of the agreement between plaintiff and defendant, and so subject to operation of the parol evidence rule. Thus, neither the defendant Kroemer Farms, Inc. contract nor the assignment formed any part of the August 1952 contract between plaintiff and defendant.

For this reason, if for no other, it cannot be said, as does the defendant in his brief, "(The indenture) is singly the most significant item in the entire case. It properly identifies each of the parties and ties in (the contract between plaintiff and defendant and the contract between defendant and Kroemer Farms, Inc.) as part of a single transaction from seller through broker to buyer."

Second, the point is governed by the principle stated in *Gooding* v. *Life Ins. Co., supra,* "But if the acts of the parties in question, are evidence of an interpretation of the contracts by the parties, the evidence cannot be permitted to vary their terms, since they are clear and unambiguous."

Such is the instant case. "Buyer" is a word of plain meaning. See also 3 Williston, Contracts (rev. ed.) Sec. 623; 20 Am. Jur., Evidence Sec. 1144; 32 C. J. S., Evidence Sec. 960.

In our view, the assignment was neither more nor less than a fact for consideration of the justice in determining whether the plaintiff was estopped to charge the defendant as the buyer under their written contract. Plainly the assignment did not modify or change the written contract. It was not, for example, a release of liability thereunder. The purpose for which it was introduced was to serve as an aid in interpreting the meaning of the sales contract at the time it was made and became effective.

In holding an estoppel to assert delay in delivering stock under a contract, we said, in *Gas Co.* v. *Wood,* 90 Me. 516, at p. 523, 38 A. 548:

> "Such an estoppel arises whenever an act is done, or a statement made, by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair."

The justice was not required to find the existence in the instant case of the elements of estoppel. Obviously Kroemer Farms, Inc. owed someone for potatoes purchased under its contract made with the defendant, whether the latter was seller or broker. Likewise the plaintiff was entitled to be paid under its contract made with the defendant, whether the latter was buyer or broker. If the defendant as a buyer owed the plaintiff, surely there was no loss to the defendant in collecting any sums payable the plaintiff on the books of Kroemer Farms, Inc. In short, whether defendant was buyer or broker with respect to the plaintiff, his entry into the Kroemer Farms, Inc. picture as assignee to collect plaintiff's claims for benefit of the plaintiff, in no way harmed him.

The assignment under the principles of estoppel thus had no controlling significance in determining the defendant's liability to the plaintiff.

To summarize:

(1) The written contract in suit was an integrated agreement, subject to the operation of the parol evidence rule.

(2) The justice was not compelled by usage or acts of the parties to interpret "buyer" to mean "broker" in defiance of the plain and unambiguous terms of the contract;

(3) Nor was he compelled to find the plaintiff was estopped to assert that the defendant was the buyer under the contract.

The entry will be

*Exceptions overruled.*