DOANE *v.* KING.

*(Circuit Court, D. Minnesota.* February 21, 1887.)

PROMISSORY NOTES—PURCHASER FOR VALUE—TRANSACTION IN STOCKS.

Defendant agreed to take from the treasurer of a corporation 100 shares of stock, and gave his note payable to the company for them. It was designed at first to give defendant stock belonging to the treasurer, who was obliged to raise some money in order to contribute something to the funds of the company, but afterwards an arrangement was made between plaintiff, who was a director, and the treasurer, by which plaintiff advanced the necessary cash, and taking therefor the treasurer's own note and defendant's note as collateral, and part of his stock was issued to defendant. Defendant knew nothing of the transaction between plaintiff and the treasurer. The treasurer made misrepresentations to defendant in selling him the stock, of which plaintiff knew nothing. *Held,* that plaintiff was a *bona fide* purchaser for value of defendant's note, and could maintain an action on it.

Motion for a New Trial.

*W. E. Hale,* for plaintiff.

*Hart & Brewer,* for defendant.

BREWER, J. Action on a negotiable promissory note. Verdict for plaintiff. The only question is, was plaintiff a *bona fide* purchaser before maturity of the note of which the one in suit is a renewal? The testimony discloses the fact that the original note was obtained by false representations; so the plaintiff was called upon to prove that he was a *bona fide* purchaser before maturity.

The facts are these: In the fall of 1883 the Pullman Iron & Steel Company was organized with a capital stock of $500,000, divided into 5,000 shares of $100 each. The company was organized for the manufacture of a patent railway spike. The patent was owned by J. W. Doane, James N. Smith, J. P. Perkins, and Frank B. Felt. They transferred the patent to the company, receiving in pay therefor the full capital stock, each taking one-fourth, or 1,250 shares. The company then had the patent, but no money, and each of the four stockholders held one-quarter of the stock, the same issued as fully paid and non-assessable. In order to raise money there seems to have been a mutual agreement between the four stockholders that 1,500 shares should be disposed of for cash, each stockholder contributing 375 shares. Afterwards, but after the transactions between defendant and the company were ended, by a formal resolution 2,500 shares were placed in the hands of Felt as trustee. It would seem that Doane and Smith, being men of means, retained their shares, and paid the fixed price, 66⅔ cents, in cash into the company's treasury. Felt, who was the treasurer of the company, not having the money to pay in, was called upon by his associates to dispose of his shares for cash, and put the proceeds into the treasury. Among other parties he applied to the defendant, who agreed to take 100 shares. Not having the money therefor, after some delay, he gave his note to the company, and received his shares. But this note was not cash, and the company wanted cash; so the plaintiff proposed to Felt to discount his (Felt's) note, and take the defendant's note as collateral.

In this way the company got the money for the shares of stock taken by the defendant. Soon after the execution of Felt's note to plaintiff, plaintiff asked Felt if he wished to hold this note of defendant's, and dispose of his own stock; if not, he would himself take the note, and let the defendant have 100 shares of his (plaintiff's) stock. Felt having raised the money necessary to cover the amount which he was bound to provide, and believing the stock good, concluded not to dispose of any more of his stock, and so the shares which were issued to defendant were shares which belonged to plaintiff. The transaction was consummated in this way: Plaintiff, having a certificate of 625 shares, surrendered it to the company, and received a new certificate of 525 shares, and the company issued a certificate of 100 shares directly to defendant. All this was done without the knowledge of defendant. On the other hand, the false representations which were made to defendant, and in consequence of which he was induced to take stock, and give his note, were all made by Felt, and plaintiff was entirely ignorant of them.

Can there be a doubt, upon these facts, that plaintiff was a *bona fide* purchaser? He gave up a hundred shares of stock which were believed by the parties to be very valuable, and which were in fact worth something. At any rate, it was the very consideration for which defendant had given his note, and it was a consideration deemed ample by the payee of the note. Certainly, plaintiff, although a director in the company, was not personally chargeable with notice of any false representations made by Felt, the treasurer, although the company of which he was a director might have been bound. Counsel say that the company received nothing; that it was not authorized to buy in its own stock; and Mr. Felt testifies, in answer to a question as to whether the company ever received anything from plaintiff, and, if so, what, in consideration of this note, answers: "Indirectly it possibly has, but directly I think not." But I do not so understand the import of the testimony. Three hundred and seventy-five shares belonging to Mr. Felt were in fact donated to the company; he doing the same, in this respect, as the other stockholders. For 100 shares of this stock he received a note payable to the company. The plaintiff advanced to the company, upon Mr. Felt's note secured by defendant's note, the cash; so the company got cash for this subscription of defendant's. It matters not what arrangements were subsequently made between Felt and the plaintiff, or what other moneys were obtained by Felt for the company, or in what way; they were transactions purely personal to the individuals. Defendant received his 100 shares of fully paid stock, as he contracted for; the company received the money, and plaintiff parted with his 100 shares. These are the undisputed facts, and the mere form in which these transactions were carried out is immaterial. The law looks at the substance, and not the form. Defendant got for his note that which he contracted to get. Plaintiff, in ignorance of any false representations made to defendant, purchased the note before maturity and gave value.

The verdict was right, and must be upheld. The motion for a new trial is overruled.