AMERICAN GAS AND VENTILATING MACHINE COMPANY

*vs.*

JOHN N. WOOD.

Androscoggin.    Opinion July 30, 1897.

*Bills and Notes.    Contemporaneous Agreements.    Estoppel.*

Independent, collateral written agreements, though executed at the same time with a promissory note, do not affect the construction of such note, or afford any defense to an action upon it.

But this rule does not apply where the two contemporaneous writings between the same parties, upon the same subject matter, may be read and construed as one paper.

In such case both papers may be read and construed together, notwithstanding one of the writings is a promissory note, when the action is between the parties to it, or their representatives.

The defendant gave to the plaintiff a promissory note for one hundred and

twenty-five dollars payable four months after date, with interest. At the same time the defendant executed and delivered to the plaintiff the following written agreement :

"LEWISTON, October 15, 1890.

It is mutually agreed between the American Gas and Ventilating Machine Co. that at the end of four months if Mr. John N. Wood the giver of note dated——does not want to pay the same he shall receive it back on the surrender by him to the American Gas and Ventilating Machine Co. one hundred shares of stock in the Maine Gas and Ventilating Machine Co. held by him.      .

American Gas and Ventilating Machine Co.
C. W. WALDRON, Secretary."

*Held ;* That the note and agreement are so connected by direct reference or necessary implication, that they are to be construed together as an entire contract.

Such an agreement is executory in its nature, requiring some further act to be done by the defendant, or some good and sufficient reason for its omission, in order to render it available as a defense.

An estoppel in pais arises whenever an act is done, or a statement made, by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair.

ON REPORT.

The case is stated in the opinion.

*J. W. Mitchell,* for plaintiff.

The transaction shows only an unexecuted, collateral agreement to accept payment of the note in a different manner than is provided for in the note itself; the certificates of stock were never transferred by the defendant to the plaintiff; the payment by the "surrender" thereof was not made prior to the commencement of this action.

The case shows nothing more than an executory agreement between the parties for payment of the note, otherwise than in cash ; and while such an agreement, if made for a sufficient consideration might entitle the defendant to an action for damages, if the plaintiff refused to stand by it, it can be no defense to this suit.    2 Parsons on Notes and Bills, c. 15, § 2, and pp. 529—531 ; *Walker* v. *Russell,* 17 Pick. 280 ; *Sexton* v. *Wood,* 17 Pick. 116 ; *Penn. Mutual Life Ins. Co.* v. *Crane,* 134 Mass. 56 ; *Pitkins* v. *Frink,* 8 Met. 12 ; *Waterhouse* v. *Kendall,* 11 Cush. 128 ; *Turner*

v. *Rogers*, 121 Mass. 12; *Hodgkins* v. *Moulton*, 100 Mass. 309; *Wyman* v. *Winslow*, 11 Maine, 398; *Cushing* v. *Wyman*, 44 Maine, 121; *Jenness* v. *Lane*, 26 Maine, 475; *Noble* v. *Edes*, 51 Maine, 34.

*A. R. Savage and H. W. Oakes*, for defendant.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, JJ.

FOSTER, J. This is an action upon a promissory note of the following tenor:

"LEWISTON, ME., Oct. 15, 1890.

Four months after date, I promise to pay the American Gas and Ventilating Machine Co. one hundred and twenty-five dollars at Lewiston, Me., with interest. Value received. J. N. WOOD."

The plaintiffs having proved the note declared on, are entitled to judgment unless upon the facts disclosed the other party has shown a legal defense. In support of such defense, the defendant introduces an agreement in writing signed by the plaintiff, executed at the same time when the note was given, and which reads as follows:

"LEWISTON, October 16, 1890.

It is mutually agreed between the American Gas and Ventilating Machine Co. that at the end of four months if Mr. John N. Wood the giver of note, dated——does not want to pay the same he shall receive it back on the surrender by him to the American Gas and Ventilating Machine Co. one hundred shares of stock in the Maine Gas and Ventilating Machine Co. held by him.

American Gas and Ventilating Machine Co.

C. W. WALDRON, Secretary."

It is argued in behalf of the defendant that this note and agreement constitute together an entire contract, and that they are to be construed together as part of one and the same transaction.

The plaintiff, on the contrary, contends that although made at the same time as the note, it must be considered as independent and collateral to it, repugnant to the very terms of the note, and

destructive of it; that it is but a promise to accept payment of the note in a different manner than is provided for in the note itself.

The certificates of stock mentioned in this agreement, and which from the evidence appears to have been the consideration of this note, were never surrendered by the defendant to the plaintiff prior to the commencement of this action.

Viewed in the most favorable light for the defendant, the transaction shows only an executory agreement or contract between the parties, requiring some further act to be done, or some good and sufficient reason for its omission, in order to render it available as a defense.

We are aware that there is a class of decisions which hold that independent, collateral agreements, though executed at the same time as the note, do not affect the construction of the original contract, or afford any defense to an action on the note.

Thus, an agreement in writing executed at the time of the making of a note which was payable at a certain day, to give indulgence to the maker for an indefinite period, which might extend beyond the specified time of payment, has been held not to be a part of the note, but only a collateral promise, upon which the promisee must rely. *Dow* v. *Tuttle*, 4 Mass., 414. There are other cases in the same line, and among which may be mentioned *Pitkin* v. *Frink*, 8 Met. 12, where a note was given by the defendant, and the plaintiff at the same time gave the defendant a writing in which he agreed to take his pay in horse hire, and not call on the defendant for the note so long as he kept the horse and carriage in good order for the plaintiff's accommodation, and the court held the stipulations independent, and constituted separate and distinct contracts, for a breach of which by either an action could be maintained. So also *Traver* v. *Stevens*, 11 Cush. 167, *Waterhouse* v. *Kendall*, Id., 128, and *Stanton* v. *Maynard*, 7 Allen, 335, where similar agreements by the plaintiff, made in consideration of notes given, were regarded as mutual and independent, executory stipulations, the performance of which was not a condi-

tion precedent to a recovery upon the notes.   *Littlefield* v. *Coombs*, 71 Maine, 110.

But there is another class of decisions wherein it is held that two contemporaneous writings between the same parties, upon the same subject matter, may be read and construed as one paper; and this rule applies notwithstanding one of the writings is a promissory note, when the action is between the parties to it or their representatives.   *Rogers* v. *Smith*, 47 N. Y. 324; *Hunt* v. *Livermore*, 5 Pick. 395; *Hill* v. *Huntress*, 43 N. H. 480; *Davlin* v. *Hill*, 11 Maine, 434.

In the latter case the court held that in an action on a promissory note, writings connected therewith by direct reference or necessary implication, are admissible in defense as parts of the same contract.

So in *Hill* v. *Huntress*, supra, an agreement, made at the same time as the note, contained a stipulation that the promisors of the note were to pay the amount of it in tanning hides for the payee, and the court held that the note and written agreement, made at the same time, relating to the manner of payment of it, were to be construed as one special agreement, as between the original parties and those standing in like situation.   The court there say, in speaking of the note :   " As between the original parties, notwithstanding its form, this instrument is but one part of a special contract, the other part of which, as it was made, was contained in the written agreement of the same date, and purporting to be executed at the same time.   Different instruments are to be construed together, as parts of the same contract, where it is necessary to carry into effect the agreement and intention of the parties."

Many of the cases relate to instances where the stipulation, agreement or memorandum, is written upon the face or back of the note itself, as in *Littlefield* v. *Coombs*, 71 Maine, 110; *White* v. *Cushing*, 88 Maine, 339; *Barnard* v. *Cushing*, 4 Met. 230; *Costelo* v. *Crowell*, 127 Mass. 293, and the cases therein cited, and where such terms become a substantive part of the note and qualify it as if inserted in the body of the instrument.

But it was otherwise in the cases of *Hill* v. *Huntress*, 43 N. H. 480, *Hunt* v. *Livermore*, 5 Pick. 395, and *Davlin* v. *Hill*, 11 Maine, 434, where the agreement was contained in writings independent of the notes which they were held to modify and govern in accordance with the intention as expressed in the several instruments.

In *Davlin* v. *Hill*, supra, the language of our court, as expressed by WESTON, J., is this: "It is manifest that the note, the plaintiff's agreement in writing of the same date, and the instrument upon the back of which it was written, and which is referred to therein, were intended to be evidence of the stipulations of the parties, in relation to the transaction. It was not necessary that the contract should be written on one piece of paper. If written on several, connected by direct reference or necessary implication, they form together evidence of what the parties have agreed."

In the case at bar the agreement bears the same date as the note, and refers expressly to the note in suit. In that agreement it is mutually agreed that if the defendant, at the date of maturity of the note, does not want to pay the same, he shall receive it back upon surrendering to the plaintiff the shares of stock held by him.

Can there be any doubt as to what the intention of the parties was? Are not the note and agreement "connected by direct reference or necessary implication?" We think so, and that the same should be construed together as an entire contract, the stipulations of which are mutual and dependent, rather than independent and collateral. Had there been a surrender or tender of the stock within the time limited by the contract, it would have constituted a defense to this action. There is no evidence or claim on the part of the defense that this was done.

What, then, is the justification offered by the defendant to exonerate him from the consequences of his failure so to surrender the stock? It is, that by the acts and declarations of the authorized agent of the plaintiff corporation, the defendant was induced to retain the stock, and that the plaintiff is thereby estopped from claiming that the defendant was at fault in not making a surrender of the same before suit was commenced.

We think this position of the defendant is well founded.

It appears that C. W. Waldron was not only owner of one-third of the capital stock of the plaintiff corporation, but was a director, secretary and general manager of the corporation in this state, and was generally empowered to act in reference to all matters pertaining to the business of the corporation. When the time mentioned in the note and agreement had expired, it was deemed advisable that an extension should be given upon this and other similar notes held by the plaintiff against other parties, in order to test the machines manufactured by the plaintiff and to ascertain if they could be made to produce satisfactory results. Such extension appears to have been granted, extending the time to May 15, 1891. But in the meantime, letters were written in behalf of this defendant and others similarly situated explaining the situation, and from all that appears in the case, it is evident that all parties were co-operating to obtain a result in relation to the use of the machines that would be of value to all concerned. This appears from the correspondence, as well as from the whole tone of the evidence given by Mr. Waldron. The defendant and other stockholders had the assurance that the plaintiff would act in good faith for the furtherance of their material interests, and they were led to believe that the control and decision as to such matters was vested in Mr. Waldron. It appears from the testimony of Waldron that up to the time this note was sued the other directors agreed with him entirely. He had frequent conversations with the Lewiston stockholders, including this defendant, and he was in hopes they would be glad to pay their notes and keep their stock, and it was understood that the result would be that if they found the machines were good for nothing, they would want to get out of it. He had repeated conversations with the defendant, and told him, not only during the time covered by the extension, but afterwards, that he might hold on to the stock and give it up when it was found that nothing could be accomplished with the machines. It is needless to further discuss the testimony, and it is sufficient to say, that in view of the repeated statements of Mr. Waldron, and his requests to the defendant to retain the stock till it was found

that the success of the enterprise could no longer be assured, and finally his assurance in his letter to the defendant that the note had been sent for collection by mistake, and that there was nothing due upon it, we think the plaintiff may properly be held to be estopped from claiming that the defendant was at fault in not surrendering the stock before suit was commenced, or is without remedy in consequence of such failure to return it to the plaintiff within the time stipulated.

This doctrine of estoppel in pais has been frequently applied to prevent a party from taking advantage of his own wrong. It was applied in *Caswell* v. *Fuller*, 77 Maine, 105, wherein HASKELL, J., makes use of the following language: "That a man should be allowed by his own speech and conduct to lead another astray, and thereby take substantial benefit from the error of which he was the cause, is subversive of natural justice." To the same effect may be cited *Stanwood* v. *McLellan*, 48 Maine, 275; *Ripley* v. *Insurance Co.*, 30 N. Y. 136, 164.

An illustration frequently given is, that if a landlord even without consideration, agrees that his tenant may pay after rent day, and by reason thereof he should omit to pay at the day, the landlord is estopped from enforcing a forfeiture.

Such an estoppel arises whenever an act is done, or a statement made, by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair. *Marston* v. *Insurance Co.*, 89 Maine, 266, 272.

*Judgment for defendant.*