CASE 47.—ACTION BY C. E. WETTLAUFER AGAINST NEWTON J. BAXTER AND OTHERS.—March 2, 1910.

# Wettlaufer v. Baxter, &c.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1.  Statutes—Negotiable Instrument Law—Construction.—Where there is doubt about the meaning of any of the provisions of the negotiable instrument law (Ky. St. Sec. 3720b), which can be solved by a reference to the law merchant, as it was theretofore administered, it should be looked to, and the act, if practicable, given such a construction as will harmonize it with the general principles of commercial law in force before its enactment.

2.  Bills and Notes—Words of Negotiability—Necessity.—In order to make a note or a bill negotiable, the words "to order" or "to bearer," or equivalent words, must be used in the body of the note, though the absence of these words does not affect the validity of a note or render it nontransferable or nonassignable.

Wettlaufer v. Baxter, &c.

3. Bills and Notes—Negotiable and Nonnegotiable Instruments— Rights and Liabilities of Parties.—Negotiable instrument Law, Sec. 1 (Ky. St. Sec. 3720b), provides that an instrument to be negotiable must be payable to the order of a specified person or to bearer, etc. Section 184 provides that a negotiable promissory note is an unconditional promise in writing to pay a sum certain in money to order or to bearer. Held that, if a note is not a negotiable instrument within the meaning of the act, the rights and liabilities of the parties on it are to be determined by the law as administered with reference to nonnegotiable instruments, but if it is negotiable the provisions of the act govern, and a note payable to a person, and not containing the words "to order" or "bearer," is not negotiable.

4. Bills and Notes—Blank Indorsement—Effect.—The provisions in Negotiable Instrument Law, Sec. 9 (Ky. St. Sec. 3720b), that an instrument is payable to bearer where the only or last indorsement is in blank, does not mean that an indorsement in blank converts a note nonnegotiable on its face and by its terms into a negotiable note.

5. Statutes—Action Under Foreign Statute—Necessity of Pleading.—Where, in an action brought in this state, it is attempted to hold a person liable upon a contract made in another state, under a statute of that state, the particular statute under which it is sought to make him liable must be pleaded as any other fact.

6. Bills and Notes—Liability of Assignor—Nonnegotiable Note. —Under Ky. St. Sec. 481, which provides that a person who signs his name on the back of a promissory note shall be treated as an assignor as to the party holding it, or unless, in writing, a different purpose is expressed, etc., where defendant indorsed a nonnegotiable note payable to him by writing his name on the back, he was merely an assignor of the note and would not be liable unless and until the maker had been first prosecuted with due diligence to insolvency.

7. Judgment—Failure to Plead Foreign Statute—Bar.—Where a petition did not state a cause of action, because it failed to plead a statute of a foreign state, a judgment for defendant on that ground is no bar to a new action under the statute properly pleaded.

JAS. R. SKILLMAN for appellant.

J. D. ATCHISON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In the state of New York on July 3, 1905, the Buffalo Carriage Top Company executed to Newton J. Baxter the following note: "January 15, 1906, after date we promise to pay to Newton J. Baxter two hundred and fifty dollars at 58 Carroll St., Buffalo, N. Y." On the back of the note Newton J. Baxter wrote his name, and before its maturity it was discounted by appellant, Wettlaufer, and delivered to him by Baxter. When the note fell due, it was presented to the Buffalo · Carriage Top Company for payment, and payment refused. Thereupon the note was protested by a notary, and notice of its dishonor mailed to Baxter at his residence in Owensboro, Ky. Baxter declining to pay the note, suit was brought on it against him in the Daviess circuit court. A general demurrer was sustained to the petition, and, declining to plead further, the petition was dismissed.

The petition as amended, after setting out substantially the facts before stated, averred that the note was executed and delivered by the payer to Baxter in the state of· New York, and was indorsed and delivered by Baxter to Wettlaufer in that state; that before the execution of the note the Legislature of the state of New York had enacted what is known as the "negotiable instrument law," which was in force when it was executed and transferred; and that its' provisions applied to the note. It is conceded that the negotiable instrument law of the state of New York is identical with the negotiable instrument law enacted by the Legislature of Kentucky in March, 1904, and which is now chapter 90B, sec. 3720B, Ky. St.

(Russell's St. secs 1820-2014.)   The questions in-
volved in the case are: Was the note before its in-
dorsement by Baxter a negotiable instrument within
the meaning of the negotiable instrument act?   Or,
if not, did Baxter, by signing his name on the back of
the note and selling and delivering it before maturity
to Wettlaufer, convert it into a negotiable note and
make all the parties to it subject to the negotiable
instrument act the same as if it had been a negotiable
note in the first instance?

The contention of counsel for Baxter is that the
note was not a negotiable instrument, and that Bax-
ter by signing his name on the back of the note be-
came merely an assignor and not liable, unless suit
was brought on it at the first term of the court
against the maker, the Buffalo Carriage Top Com-
pany, and it prosecuted to insolvency.   In other
words, the effort is to apply to this case the rule of
law announced by this court in Francis v. Gant, 80
Ky. 190, and many other cases, holding that, before
an assignee (as it is said Wettlaufer is) can recover
of an assignor (as it is contended Baxter is), he must
institute his action against the payer of the note at
the first term of the court after the note falls due,
obtain judgment, have execution issue, and a return
of no property found, without unreasonable delay.
If the law as declared in this line of cases applies to
this note, it is manifest that the ruling of the lower
court was correct, as there is no averment that the
Buffalo Carriage Top Company was prosecuted to
insolvency, or that any action was brought against
it before proceeding against Baxter.   On the other
hand, the contention for Wettlaufer is that the lia-
bility of Baxter upon this note is to be determined
by the negotiable instrument act, which repealed all

former laws upon the subject of bills and notes, and the rights and duties of assignees and assignors under them, and that by the provisions of this act Baxter occupies the position of an indorser and not an assignor of the note. Or, in other words, that, although the note may not have been negotiable when first executed and delivered, Baxter by his indorsement converted it into a negotiable note, and that, treating it as such, the liability of Baxter and the other parties must be controlled by the negotiable instrument act.

In considering the questions involved, we will for convenience refer to the negotiable instrument act adopted in this state. The sections of the act pertinent are:

"§ 3720B. Section 1. An instrument to be negotiated must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer. (2) Must contain an unconditional promise or order to pay a sum certain in money. (3) Must be payable on demand or at a fixed or determinable future time. (4) Must be payable to the order of a specified person or to bearer; and (5) where the instrument is addressed to a drawee, he must be named or otherwise indicated therein within reasonable certainty."

"Sec. 8. The instrument is payable to order where it is drawn payable to the order of a specified person or to him or his order. It may be drawn payable to the order of: (1) A payee who is not maker, drawer, or drawee; or (2) the drawer or maker; or (3) the drawee; or (4) two or more payees jointly; or (5) one or some of several payees; or (6) the holder of an office for the time being. Where the instrument is payable to order, the payee must be

named or otherwise indicated therein with reasonable certainty.

"Sec. 9.   The instrument is payable to bearer: (1) When it is expressed to be so payable; or (2) when it is payable to a person named thereon or bearer; or (3) when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making is so payable; or (4) when the name of the payee does not purport to be the name of any person; or (5) when the only or last indorsement is an indorsement in blank."

"Sec. 30.   An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

"Sec. 34.   A special indorsement specifies the person to whom or to whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument.   An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

"Sec. 184.   A negotiable promissory note within the meaning of this act is an unconditional promise in writing made by one person to another, signed by the maker engaging to pay on demand or at a fixed or determinable future time, a sum certain in money to order or to bearer.   Where a note is drawn to the maker's own order, it is not complete until indorsed by him."

The negotiable instrument act is not a new law. It is with few exceptions merely the codification of old laws that were in force and effect by virtue of

judicial pronouncement or legislative enactment, and
generally uniform.  In many of the states, including
our own, there was very little statutory law on the
subject of bills and notes previous to the passage of
this act.  Some of these statutes were not uniform,
nor indeed were the opinions of the courts altogether
in harmony.  And so, to remove the confusion and
uncertainty that was caused in commercial affairs
by the lack of unformity in legislative enactments
and harmony in judicial opinions, a committee of
gentlemen learned in the commercial law prepared .
the negotiable instrument act, not with a view of mak-
ing any radical changes in the law as generally
understood and administered, but to remove the
doubt as well as conflict that had in some instances
come into existence from difference in statutory laws
as well as court opinions.  The result of their labors
was the present act, which has become the law in a
large majority of the states.  And looking to the in-
tention of the law and the purpose of its preparation
and enactment; if there is doubt about the meaning
of any of its provisions, and that doubt can be solved
by a reference to the law merchant as it was here-
tofore administered, this law should be looked to,
and the act if practicable given such a construction as
will make it harmonize with the general principles
of commercial law in force before  its  enactment.
For the purpose then of ascertaining what bills and
notes it was intended should be negotiable within the
meaning of this act, we may with propriety inquire
what words were generally considered necessary to
make a note or bill negotiable before this act went
into effect, with a view of noting what change if any
was made in this particular.  In an article in 7 Cyc.,
page 606, by a well-known  writer  on  commercial

paper, it is said: "The usual form of negotiable paper is a provision for payment to 'order' or 'bearer.' These or similar words are in general necessary to its negotiability, and are often required by statute, but a note which is nonnegotiable for want of such words is still a valid note and may be declared on as such. Bills payable to bearer were formerly held to be nonnegotiable, as being without words of transfer; but they are now recognized as negotiable and transferable by delivery. Making the instrument payable 'to the order of' a person named is the same. as to such person 'or order'; and in like manner to a person named 'or bearer' is the same in effect as 'to bearer.' Without words of negotiability purchasers take the bill or note subject to all defenses which were available between the original parties; and if it was originally nonnegotiable, as against the original parties, it will not be rendered negotiable by subsequent transfer in negotiable form." The same rule is announced in 4 Am. & Eng. Ency. of Law, 133; Story on Bills of Exchange, § 60; Daniel on Negotiable Instruments, § 105; Bank v. Butler, 113 Tenn. 574, 83, S. W. 655; Westburg v. Chicago Lumber Co., 117 Wis. 589, 94 N. W. 572.

It will thus be seen that it was uniformly held that, in order to make a note or a bill negotiable, the words "to order" or "to bearer," or equivalent words, must be used in the body of the note. It will be kept in mind, however, that the absence of these words do not affect the validity of a note or render it nontransferable or nonassignable. Their only effect is to make the instrument negotiable, and thereby cut off defenses that the maker, or either of the parties to the paper might have and make against a

holder in due course if the note was not negotiable. The negotiable instrument act does not apply to or affect the rights or liabilities of persons on paper that is not within its meaning negotiable. But, if a note is made payable to a specified person "or order" or to a specified person "or bearer," and such a paper comes into the hands of a holder in due course—that is, a holder who has taken the instrument under the following conditions mentioned in section 52, "(1) that the instrument is complete and regular upon its face, (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored if such was the fact, (3) that he took it in good faith and for value, (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it"—then neither the maker of the note nor any other person on it can make as against him defenses such as fraud, or want of consideration, or the like, that they or either of them might have made if the note was not a negotiable instrument. In short, if a note is not a negotiable instrument within the meaning of this act, then the rights and liabilities of the parties on it are to be determined by the law as administered with reference to nonnegotiable instruments. If it is a negotiable instrument in the meaning of the act, then the rights and liabilities of the parties to it are fixed and determined by the provisions of the act alone. This note in our opinion, which was payable to Baxter alone, and did not contain the words "to order" or "bearer," was not a negotiable instrument. These words by sections 1 and 184 are indispensable to make the paper a negotiable instrument within the meaning of the act.

But the argument is further made that as Baxter indorsed the note in blank—that is, signed his name on the back of it without any other words—he thereby converted the note into a negotiable instrument. It is true that section 9 of the act provides that "the instrument is payable to bearer   *   *   *   when the only or last indorsement is an indorsement in blank;" but this does not mean that an indorsement in blank converts a note nonnegotiable on its face and by its terms into a negotiable note. The construction would enable the person who last signed his name on the back of the note to change entirely the contract as entered into between the parties, and have the effect of making the maker, payee, and all prior indorsers liable upon a negotiable instrument when they intended to and only became liable upon a note that was not negotiable, and this, as can readily be seen, would be a most important and material change in the obligation assumed by them when they signed the paper. To give the act this construction would place it in the power of any indorser who chose to sign his name in blank to change by this act the entire character of the paper as well as the rights and liabilities of the parties to it. It would make the character of the paper depend upon the manner of the indorsement and not upon the terms expressed in the paper. Thus, if A. indorsed it in blank to B., it would be negotiable; but, if B. indorsed it specially to C., it would be nonnegotiable. Manifestly it was not intended that the mere indorsement of the note by a remote or other indorser should have this effect. When a paper is started on its journey into the commercial world, it should retain to the end the character given to it in the beginning and written into its face. If it was intended to be a negotiable instrument, and was so written, it should continue to be one. If it was in-

tended to be a non-negotiable instrument and was so written, it should so remain. Then everyone who puts his name on it, as well as everyone who discounts or purchases it, will need only to read it to know what it is and what his rights and liabilities are.

In our opinion section 9 was merely intended to describe or designate the conditions under which a note negotiable on its face might become payable to bearer, and was not intended to apply to a note not on its face or by its terms negotiable. To illustrate, if this note was payable to "Newton J. Baxter or order," then the paper upon its face would be a negotiable instrument, although payable only to Baxter or order, and the only effect of the indorsement on the note by Baxter in blank would be to convert the note from a note payable to order into an instrument payable to bearer. But this indorsement would not in any manner change the negotiability of the note, nor change the attitude of any of the prior parties on the note, or increase their liability or cut off any defenses that they might have made, as it was at all times a negotiable instrument. Then, too, "when the only or last indorsement is an indorsement in blank," the payee without notice of any defect in the title of the holder may pay the same to him, as it will be presumed it came into his hands in due course; no indorsement being necessary. Although the note under our construction of the negotiable instrument act was not a negotiable instrument, yet Baxter had the right to indorse it and transfer it by delivery, and pass whatever title he had to the transferee or assignee. But the assignee would then take the note, not subject to the provisions of the negotiable instrument act, but under the law applicable to non-negotiable paper.

Having this view of the matter, Baxter should be treated under our statute as merely the assignor of a nonnegotiable note, unless the further point presented by counsel for appellant is sound.  Upon this proposition the argument is made that as the note was made in the state of New York, and was there payable, and there indorsed and transferred by Baxter, the liability of Baxter is to be determined by the laws of that state.  And it is said, in brief, that under the law of that state the effect of the indorsement by Baxter was to make him liable to the holder as a guarantor or maker without proof or demand or notice of nonpayment; that the indorsement of the note, although it is not negotiable, was equivalent to making a new note; that it was a direct and positive undertaking on the part of the indorser to pay the note to the indorsee, and not a conditional one to pay, if the maker did not, upon demand after notice; that the indorser in such a case stands in the relation of principal, and not as surety, to his indorsee.

But the case was evidently prepared by counsel for appellant upon the theory that the note was a negotiable instrument, as the petition as amended does not set out the law of New York under which Baxter would be liable as indorser, although the note was not negotiable.  If it had been intended to hold Baxter upon the note under the law of New York, independent of the negotiable instrument act, then the law of that state should have been pleaded, so that we might determine from its provisions the liability, if any, undertaken by Baxter when he indorsed the paper.  It is well settled that when, in an action brought in this state, it is attempted to hold a person liable upon a contract made in another state, under a statute of that state, the particular statute under

which it is sought to make the party liable must be pleaded as any other fact, so that the court may judge from the law as set out in the pleading what is its meaning and effect. Roots v. Merriweather, 8 Bush, 397. But, in the absence of a pleading setting out what the law of New York was at the time the note was indorsed by Baxter, we cannot assume that it was as stated by counsel in argument, and so his liability must be measured by our law independent of the negotiable instrument act. And as under this law Baxter would be treated merely as an assignor of the note, and would not be liable unless and until the maker had been first prosecuted with due diligence to insolvency, the petition did not state a cause of action. Ky. St. § 481; Campbell v. Farmers' Bank of Kentucky, 10 Bush, 152; Edgewood Distilling Co. v. Nowland, 44 S. W. 364, 19 Ky. Law Rep. 1740. We may add, however, that, as the petition did not state a cause of action, the judgment below will not bar a new action under the New York statute properly pleaded.

The judgment is affirmed.