Argued May 4, decided June 28, 1910.

## WASHBURN *v.* INTER-MOUNTAIN MINING CO.
[109 Pac. 382.]

CHATTEL MORTGAGES—DISTINGUISHED FROM CONDITIONAL SALE.

1. Where a sale of a stamp mill provided that the seller sold, transferred, and assigned the same to the buyer, but that, until the entire purchase price was paid, the title to the mill and machinery should remain in the seller, the agreement constituted a conditional sale and not a chattel mortgage, though it also declared that the seller at his option might take possession of the mill, machinery, etc., with or without process, and sell the same at private or public sale and indorse the proceeds as a payment on the price after the payment of expenses, etc.

FIXTURES—CONDITIONAL SALES—CHATTELS AFFIXED TO FREEHOLD.

2. Where the president and manager of defendant corporation purchased a stamp mill in his own name, but for the corporation, by a conditional sale reserving title in the seller until· paid for, to be used in the operation of defendant's mines, the mill, though permanently affixed to the freehold, remained personalty as against both defendant and the buyer until the price was paid.

SALES—CONDITIONAL SALE—PRIORITY OVER MINER'S LIEN.

3. Where a stamp mill purchased by the president of defendant mining company under a conditional sale contract was erected and permanently affixed to the freehold at the mines as intended, the conditional agreement, not being recorded, was invalid as to third persons without notice, and the mill was therefore subject to miners' liens as a part of the freehold.

SALES—CONDITIONAL SALES—VALIDITY AS TO THIRD PARTY.

4. The rule that an agreement for the conditional sale of a chattel is valid as against third parties, as well as against the parties to the transaction, relates to parties dealing for the property as a chattel, and does not apply to third persons without notice of the condition, where the character of the property as to them has been changed to realty by being affixed to the soil.

MECHANICS' LIENS—REQUISITES—OWNERSHIP OF PROPERTY.

5. A mechanic's lien claimant must connect himself with the owner of the property.

MINES AND MINERALS—MINERS' LIENS—LIEN NOTICES—REQUISITES—
"ROADS, TRAMWAYS, TRAILS, FLUMES, DITCHES, OR PIPE LINE"—
"UPON ANY MILLSITE OR MILL USED, OWNED, OR OPERATED IN CONNECTION WITH SUCH MINE."

6. Section 5668, B. & C. Comp., as amended by Laws 1907, p. 294, provides that, when two or more mines are claimed by the same person or persons and worked through a common shaft or tunnel or at one mill, or other reduction works, then all the mines, and all roads, tramways, trails, flumes, ditches, or pipe lines, buildings, structures, or superstructures used or owned in connection therewith, shall be deemed one mine. *Held*, that the words "roads, tramways, trails, flumes, ditches or pipe lines," include such appurtenances when not situated upon the mine, and that the term "upon any millsite or mill used,. owned, or operated in connection with such mine," in such section, prior to its amendment, had reference to the millsite or mill not situated on the mine; the section as amended necessarily including the millsite or mills connected with the mine, without being specifically mentioned, so that a miner's lien notice need not state nor the proofs show that the labor for which the lien is claimed has been done on the mill or building on the mine to subject them to the lien.

MINES AND MINERALS—MINER'S LIEN—RIGHT TO LIEN.

7. A foreman at a mine whose business it was to see that the work of mining was done in different places, and who framed timbers and helped the men, took part in the erection of the mill, and did other things generally to assist in the furtherance of the work, was not such an executive representative of the mining corporation as to preclude him from obtaining a miner's lien for services performed.

CORPORATIONS—LIABILITIES OF DIRECTORS—NOTICE.

8. A director of a corporation having no actual knowledge of a conditional sale of property to its president for the benefit of the corporation, was not bound thereby.

MINES AND MINERALS—MINERS' LIENS—PROOF OF DATE—PRIMA FACIE CASE.

9. In a suit to foreclose a miner's lien for work done, evidence that the claimants were employed by W. who directed the work, kept their time, and was bookkeeper for defendant corporation, and, as to claimant K., that he worked in the mines extracting ore and breaking ground, etc., that there was a balance due him of $87.80, and that the total amount paid him was $59.75, established a *prima facie* case.

MARSHALING ASSETS AND SECURITIES—MINERS' LIENS.

10. Where, as to claimants of miners' liens, the mines and stamp mill constituted real property and could not be sold separately without

depreciation of either or both, the owner of the mill under a conditional sale which was not good as against the claimants, was not entitled to compel a sale of the mines in satisfaction of the claims before a sale of the mill should be ordered.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit instituted by J. H. Washburn to foreclose miners' liens. The defendant, Inter-Mountain Mining Company, was the owner of 14 mining claims in Baker County, Oregon, W. L. Vinson, at the time of the acts complained of in the answer of Flack, was its president and manager. Between May, 1908, and June 14, 1909, plaintiff and the 20 other lien claimants mentioned in the complaint, under employment of the defendant company, performed labor upon the said mines, as a group, in constructing tunnels and performing other work for the development thereof, in search for gold. Upon the latter date, at suit of C. E. Bond, Robert D. Carter was appointed a receiver for defendant company, and thereupon took possession of the mines. Thereafter on June 23, 1909, the lien claimants filed in the office of the county clerk of Baker County, Oregon, notices of their liens upon the mines for such labor, under the provisions of Section 5668, B. & C. Comp., as amended by the Laws of 1907, p. 293. Thereafter each of the other lien claimants assigned his claim to plaintiff, who, on July 30, 1909, brought this suit to foreclose the same. The defendant corporation and the receiver made no defense to the suit. Defendant Bond answered, alleging a laborer's lien, which was disallowed by the trial court, and he does not appeal. The defendant Flack answered, and, beside denials, alleges affirmatively, that the 20-stamp quartz mill, situated upon the mines, is personal property of which he is the owner. He asks that the court adjudge that it is not subject to the liens of plaintiff; and that the receiver be directed to release it to him, his contention being, that on May 2, 1908, he was the owner thereof, it being situated

in Malheur County, Oregon; and that on that day he
entered into an agreement with W. L. Vinson for the sale
of it to him in the following words (omitting the prelim-
inary statement and signatures) viz.:

"Now, therefore, in consideration of the sum of one
thousand dollars ($1,000) in hand paid by the party of the
second part to the party of the first part, the receipt
whereof is hereby acknowledged and confessed, the said
party of the first part has this day sold, assigned and dis-
posed of and by these presents does hereby sell, assign,
transfer and set over unto the said party of the second
part the said mill consisting of one (1) twenty-stamp mill
including building and all machinery, dies, tools and
appurtenances thereunto belonging, except the dwelling
house, blacksmith shop, two ore cars and three hundred
feet of rails, upon the following terms and conditions,
to-wit:    First.    The said party of the second part hereby
promises and agrees to remove said mill, building, machin-
ery, tools, and appurtenances unto property owned by him
situated near the Rainbow mine, in the county of Baker
and State of Oregon, as soon as may be hereafter, and to
do all of said work free of charge to the party of the first
part.    Second.    The said party of the second part hereby
promises and agrees to pay to the said party of the first
part the further sum of nine thousand dollars ($9,000),
according to the terms and conditions of one certain
promissory note bearing even date herewith, executed by
the said party of the second part to the party of the first
part as the balance of the purchase price of said mill and
machinery, and that until the entire purchase price shall
have been paid, the title to the said mill and all machinery
hereinbefore described shall be and remain in the party of
the first part.    Third.    Upon the payment to the said party
of the first part of the entire purchase price of said prop-
erty, he hereby promises and agrees to satisfy and release
unto the said party of the second part all claim, right and
title in and to said mill and machinery.    Fourth.    It is
further understood and mutually agreed by and between
the parties hereto that time is of the essence of this con-
tract, and that for any failure on the part of the party of
the second part to make the aforesaid payments in accord-
ance with the aforesaid promissory note, the said party

of the first part may, at his option, enter upon and take possession of the aforesaid mill, machinery, tools, and appurtenances, together with all improvements made thereon, either with or without process of law, and to sell the same either at private or public sale, after having given ten (10) days written notice thereof by publication or otherwise, and to endorse upon said note after the payment of all expenses the money remaining from the sale thereof, it being distinctly understood that the party of the first part may, at his option, regard this merely as an option to purchase. Fifth. It is further understood and mutually agreed by and between the parties hereto that the covenants, stipulations and agreements herein contained shall be binding alike upon heirs, executors, administrators and assigns of the parties hereto as upon the parties themselves."

In July, 1908, the mill and buildings were moved by defendant company to the mines for the operation thereof and erected thereon, being permanently affixed to the soil. Additions were also made to the machinery and buildings at the same time, viz.: an engine, dynamo, concentrator, shafts, pulleys, etc., which were also permanently affixed to the soil, and in the month of February, 1909, Vinson duly assigned such agreement to the defendant company. Upon the trial a decree was rendered in favor of plaintiff. Defendant Flack appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Clifford & Correll,* with an oral argument by *Mr. Morton D. Clifford.*

For respondent there was a brief and an oral argument by *Mr. Gustav Anderson.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first question for determination is whether the agreement between Flack and Vinson is a conditional sale or a chattel mortgage, and this must be ascertained from the intention of the parties as gathered from the language of the agreement. It recites that the first party "does

hereby sell, assign, transfer, and set over unto the said party of the second part," etc.   But it provides that, "until the entire purchase price shall have been paid, the title to the said mill and all machinery hereinbefore described shall be and remain in the party of the first part," clearly indicating a conditional sale.   Such has been the holding of this court in several cases:   *Singer M. Co.* v. *Graham,* 8 Or. 17: 34 Am. Rep. 572; *Herring-Marvin Co.* v. *Smith,* 43 Or. 315 (72 Pac. 704: 73 Pac. 340.)   The further stipulation in the agreement that "the said party of the first part may, at his option, enter upon and take possession of the aforesaid mill, machinery, tools, and appurtenances, together with all improvements made thereon, either with or without process of law, and to sell the same either at private or public sale * * and to endorse upon said note after the payment of all expenses the money remaining from the sale thereof" does not constitute it a chattel mortgage, as the plain intention of the parties was that the vendor shall retain the title.   *Freed Furniture & Carpet Company* v. *Sorensen,* 28 Utah 419 (79 Pac. 564: 107 Am. St. Rep. 731.)   Also, see note to this case in 3 Am. & Eng. Ann. Cas. 639.

2. And as the mill was purchased by Vinson for the defendant corporation, for the operation of these mines, the title thereto remained in Flack, as against both Vinson and the defendant company.   And this is the result even though the chattel be permanently affixed to the freehold, the agreement being permitted to control.   It is held in *Alberson* v. *Elk Creek Mining Company,* 39 Or. 552 (65 Pac. 978), that,

"Latterly, the strict rule that whatsoever is affixed to the soil partakes of the nature and becomes a part of the realty itself has been much relaxed to meet the requirements of manufacturing industries and trade relations, so that now the question whether an article of personalty, in its original state, has become a part of the freehold, depends upon three conditions:   Annexation, real or con-

structive; adaptability to the use or purpose of the realty to which it is attached; and the intention of the party making the annexation to make it a permanent accession to the freehold."

3. No doubt it was the intention of both Vinson and the defendant company to make the building and mill a permanent accession to the freehold. But the agreement amounts to a stipulation that, as between the parties to the agreement, it should remain personalty until the price was fully paid. *Landigan* v. *Mayer,* 32 Or. 245 (51 Pac. 649: 67 Am. St. Rep. 521) ; *Hershberger* v. *Johnson,* 37 Or. 109 (60 Pac. 838.) However, when the mill is affixed to the soil, the situation is changed as to the rights of third parties who are without notice of the terms of the agreement. When the chattel, which was sold for that purpose, has been affixed to the soil, a party dealing with reference to the realty upon which the mill is situated, without notice of the reservation in the agreement, will not be affected thereby; but, as to him, the mill will be treated as a fixture. The reason for this rule is that to hold otherwise would render uncertain land titles, endanger the rights of purchasers, and afford opportunities for fraud. The condition of the agreement, being unrecorded, is in the nature of a secret lien, which is contrary to the policy of our law. This rule is laid down by this court in *Muir* v. *Jones,* 23 Or. 332 (31 Pac. 646: 19 L. R. A. 441), where it was urged, as here, that the vendee of the chattel could invest the plaintiff with no better title than he himself had. Mr. Chief Justice LORD says: "We are unable to subscribe to this doctrine," and holds that while by agreement barns or other structures, so attached to the soil as to become part of the realty, may be made to remain personal property; yet the general course of decisions is that a purchaser of land on which such fixtures are located must have notice of such agreement or he will be entitled to hold them as part of the realty. To the same effect, see *Landigan* v. *Mayer,* 32 Or. 245 (51 Pac. 649: 67 Am. St.

Rep. 521) ; *Union B. & T. Co.* v. *Wolf Co.,* 114 Tenn. 255 (86 S. W. 310: 108 Am. St. Rep. 903), and note to the latter case in 4 Am. & Eng. Ann. Cas. 1073, where the authorities are reviewed.

4. It is true, as stated by counsel for defendant, that an agreement for the conditional sale of a chattel is valid as well against third parties as against the parties to the transaction. *Singer M. Co.* v. *Graham,* 8 Or. 17 (34 Am. Rep. 572). But that rule relates to parties dealing for the property as a chattel, and does not apply to third parties without notice of the condition, where the character of the property has been changed to realty by being affixed to the soil.

5. Also, as defendant contends, a mechanic's lien claimant must connect himself with the owner of the property. But Flack has no interest in the realty, nor does the lien reach the personalty, and, as to the laborers without notice, the defendant company was the owner.

6. It is not necessary that the lien notice shall state or the proof show that the labor for which the lien is claimed was done on the mill or building to subject them to the lien. Section 5668, B. & C. Comp., as amended (Laws 1907, p. 294) provides:

"That when two or more mines * * are claimed by the same person or persons and worked through a common shaft or tunnel * * or at one mill, or other reduction works, then all the mines * * and all roads, tramways, trails, flumes, ditches, or pipe lines, buildings, structures, or superstructures used or owned in connection therewith, shall, for the purposes of this act, be deemed one mine."

The reference in this language to "roads, tramways, flumes, ditches, and pipe lines," etc., includes such appurtenances when not situated upon the mine, as those upon the mine are part of the realty and need not be specially mentioned. And so the use of the term "upon any millsite or mill used, owned, or operated in connection with such mine," in Section 5668, prior to the amendment of 1907,

had reference to such millsite and mill not situated upon the mine, as is further shown by the subsequent language of that section. Therefore, the section as amended necessarily includes the millsite and mill situated upon the mine without being specially named.

7. It is further contended by defendant that the decision in *Durkheimer* v. *Copperopolis Copper Co.*, 54 Or. 37 (104 Pac. 895), precludes recovery by plaintiff Washburn upon his individual lien, for the reason that he was superintendent and manager of the defendant company. But the evidence does not disclose that he was superintendent or manager of defendant company. On the contrary, he testifies that he was foreman and did general work, helped on different things, made things, framed timbers, and looked after the work. On cross-examination he says his business was foreman and to see that the work was done in different places; that he framed timbers; helped the men; did this, that and the other, to help the thing along; and that he took part in the erection of the mill. His employment comes directly within the holding in *Flagstaff* v. *Cullins,* 104 U. S. 176: 26 L. Ed. 704, that "he was the overseer and foreman of the body of miners who performed manual labor upon the mine. He planned and personally superintended and directed the work. * * His duties were similar to those of the foreman of a gang of track hands upon a railroad, or a force of mechanics engaged in building a house." This language is quoted with approval in *Durkheimer* v. *Copperopolis Company,* and distinguishes the case we are considering from the latter.

8. It is also urged by defendant that Washburn must be presumed to know the terms of the agreement between Flack and Vinson as he was an officer and director of the defendant company. No doubt the defendant company is presumed to know the terms of that agreement because its president and manager had notice and it was made for

its benefit.  Thompson, Corp. (2 ed.) § 1673; § 1668.  But not so as to Washburn, although he was a director.  To affect him individually, knowledge must be brought home to him.  He denies any knowledge that the sale was conditional, and there is no evidence that shows he had notice thereof.  The statement in *Holly Mfg. Co.* v. *New Chester Water Company* (C. C.) 48 Fed. 889, that "it appears that some of the directors had positive knowledge of the terms of the contract with the Holly Company and, under the circumstances, notice thereof is to be imputed to them all," only means all as constituting the corporation and is not authority for holding that, in an individual matter, a director is charged with notice because the corporation is presumed to have notice on account of notice to another director.

9. It is said in *Peckham* v. *Hendren,* 76 Ind. 47, that knowledge is imputable to a corporation by the acts of its agent, but will not be imputed to an officer thereof in a transaction between him and the corporation in which he is acting for himself and not for it.  To the same effect is Cook, Stock & Stockholders, § 727; Cook, Corp. § 727; *Rudd* v. *Robinson,* 126 N. Y. 113 (26 N. E. 1046: 12 L. R. A. 473: 22 Am. St. Rep. 816.)  It is urged that there is no evidence as to the kind of work or where it was performed by the claimants, or that the claims were not paid.  But it appears from the evidence that Washburn employed the men, directed the work, kept their time, and was bookkeeper.  He testifies, as to King, that he worked in the mine, extracting ores and breaking ground in different places on the property described in the complaint; gives the amount of his whole bill and says that he was not paid in full; that he has a balance due him of $87.80; that the total amount paid him was $59.75.  Similar evidence is given as to each claimant, and is, at least, *prima facie* sufficient to sustain the lien.

10. Defendant also contends that the plaintiff should be

required to take satisfaction first by sale of the mines, in which Flack has no interest, and leave the mill for the satisfaction of defendant's claim, if the mines sell for sufficient to satisfy the plaintiff's claims.   This is the rule where there are two separate and distinct properties and they can be sold separately without depreciation of either. But the mines and mill constitute one property and neither can be sold separately without a depreciation in value of the other.   It is only when there are two funds or properties that the doctrine of marshaling securities can be invoked. Neither is this relief suggested by the pleadings nor asked in the prayer of the answer.   The facts, however, may be sufficient to entitle defendant Flack to be subrogated to the equities of the plaintiff upon the sale of the property or other stage of the proceeding, if such relief is sought.

We find no error in the rulings of the trial court.   The decree is affirmed.                                    AFFIRMED.