[S. F. No. 9277. In Bank.—January 4, 1922.]

## ELI E. PITMAN, Appellant, v. AGNES J. WALKER, Respondent.

[1] CORPORATIONS—WRONGFUL ACTS OF AGENTS—IMPUTED NOTICE—APPLICABILITY OF RULE TO OFFICERS.—While a corporation is bound by the unlawful or fraudulent acts of its agents within the scope of their employment and notice of such wrongful acts is imputed to the corporation, the rule does not extend to the imputing of such notice to an officer of the corporation without actual notice or connection with the transaction, and in matters affecting his private and independent dealings with the corporation.

[2] ID.—SALE OF STOCK—UNDISCLOSED REPRESENTATIONS OF AGENT—INAPPLICABILITY OF RULE.—The doctrine of imputed notice of the unlawful and fraudulent acts of the agents of a corporation cannot be fairly applied to a director of a business corporation with relation to undisclosed representations of an agent of the corporation in the sale of its stock.

[3] MORTGAGE—ASSIGNMENT OF INTEREST IN ESTATE—SECURITY FOR NOTE.—An assignment of an interest in the estate of a deceased person as security for the payment of a promissory note is a mortgage under section 2924 of the Civil Code and passes to the assignee of the note without formal assignment under the provisions of section 2936 of such code.

[4] ID.—NOTE AND CONTEMPORANEOUS MORTGAGE — PURCHASER WITH NOTICE—DESTRUCTION OF NEGOTIABILITY.—Mortgage security oper-

---

1. Corporation's knowledge as imputable to officer thereof, note, Ann. Cas. 1915A, 855.

Whether officer or employee of corporation is chargeable with its knowledge of infirmities in commercial paper purchased from it, notes, 48 L. R. A. (N. S.) 65; L. R. A. 1915D, 1099.

4. Provisions in mortgage securing note as affecting negotiability, notes, Ann. Cas. 1916C, 503; Ann. Cas. 1912D, 1.

ates to destroy the negotiability of a promissory note in the hands of a purchaser with notice thereof, if the mortgage is executed contemporaneously with the note, as part of the same transaction.

[5] ID.—NOTE AND SUBSEQUENT MORTGAGE—PURCHASER WITH NOTICE —NEGOTIABILITY.—Where a promissory note was negotiable as originally executed, but subsequently mortgage security was demanded and given, such note is negotiable in the hands of a subsequent purchaser with notice of the security in so far as the maker is prohibited from setting up the defenses of fraud or failure of consideration, but the holder is bound by all the restrictions which section 726 of the Code of Civil Procedure places upon actions to collect a debt secured by mortgage.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Reversed.

The facts are stated in the opinion of the court.

Short, Lindsay & Woolley, Carl E. Lindsay, C. O. Hansen and F. W. Docker for Appellant.

M. K. Harris and Geo. Cosgrave for Respondent.

SLOANE, J.—The plaintiff has appealed from a judgment in favor of the defendant in an action to recover five thousand dollars on a promissory note.

The note was executed by the defendant to the Boden Automatic Hammer Company, a corporation, in consideration for the purchase price of certain shares of the capital stock of the corporation, and was assigned to the plaintiff before maturity and for a valuable consideration. While the note was negotiable in form, it was assigned to plaintiff with security from the maker given after the execution of the note, but prior to the assignment, and consisting of an equitable mortgage upon the maker's interest in the estate of her deceased husband. It was claimed that, by reason of such security, the negotiability of the instrument had been destroyed and that the plaintiff took it subject to any defenses existing against the original payee.

The defenses pleaded were that there had been a failure of consideration in that the stock of the corporation received therefor was without value, and that the defendant had been induced to purchase the same and execute said note therefor by false and fraudulent representations; and that said sale

of stock was void under the "blue sky" law by reason of the fact that no certificate or permit of the commissioner of corporations had been exhibited to defendant before the purchase of said stock and execution of said note therefor, as required by law.

The primary question to be determined is whether or not these affirmative defenses are available to the defendant; and this depends upon whether or not the note was negotiable, and the plaintiff a purchaser in due course.

That the note was negotiable in form, and was assigned for value and before maturity, is beyond dispute. Respondent contends, however, that the assignment was taken by plaintiff with notice of defendant's equities, or at least under circumstances imputing notice sufficient to put the purchaser on inquiry. Plaintiff was at all times covered by the transaction a stockholder, director, and vice-president of the corporation, named as payee in the note. He was aware that the note was given on the purchase of the corporate stock. He knew that defendant had made a previous purchase of five thousand shares of the stock and had paid three thousand dollars of the purchase price. She had, subsequent to the purchase, spoken to him about her investment, and asked him if he thought the stock was good. He replied that he thought it was, that he had invested in it himself, which was the fact. He testifies that he had no knowledge prior to taking the assignment of her note that she was dissatisfied; knew nothing of any representations that had been made to induce her to buy stock, and was not aware of any irregularity or failure in exhibiting to her the corporation commissioner's permit, which permit had been duly issued. There is nothing in the evidence in rebuttal of this testimony. The only theory upon which can rest the implied finding from the verdict of the jury in defendant's favor that plaintiff was not a purchaser in good faith and without notice of any infirmities in the note, is that a presumption or inference arises against him from his connection with and general familiarity with the corporate business. To whatever extent this might be the rule as to transactions in the ordinary course of the corporation's business, it would not apply to irregular conduct or fraudulent acts of other corporate agents not actually brought to his attention. The presumption, if any such may be indulged by the officers of

the company, is that the sales agents acted fairly and in accordance with law.

[1] The corporation on familiar principles of law is bound by the unlawful or fraudulent acts of its agents within the scope of their employment, and notice of such wrongful acts is imputed to the corporation, but this rule does not extend to the imputing of such notice to an officer of the corporation without actual notice or connection with the transaction, and in matters affecting his private and independent dealings with the corporation. (*Washburn* v. *Inter-Mountain Min. Co.*, 56 Or. 578, [Ann. Cas. 1912C, 358, 109 Pac. 382]; *Peckham* v. *Hendren*, 76 Ind. 47; Cook on Stock and Stockholders, 727; 14A Corpus Juris, 100; *Doane* v. *King*, 30 Fed. 106; *King* v. *Doane*, 139 U. S. 166, [35 L. Ed. 84, 11 Sup. Ct. Rep. 465, see, also, Rose's U. S. Notes].)

It has been held that a director or managing officer of a banking corporation may not claim the immunities of a purchaser without notice of the commercial paper of his bank, where the infirmity of the paper appears on the records of the corporation or arises within the scope of the officer's employment. (*McCarty* v. *Kepreta*, 24 N. D. 395, [139 N. W. 992].) This decision, however, rests upon the peculiar provisions of the banking laws, and the fact that the infirmity in the note in question appeared from the records of the bank's business.

[2] Such doctrine of notice cannot be fairly applied to a director of a business corporation with relation to undisclosed representations of an agent of the corporation in the sale of its stock.

It remains to be determined if the note in question is entitled to the privileges of a negotiable instrument.

That it was negotiable at the time of its execution and delivery is conceded. It is claimed, however, that its negotiability was destroyed by the subsequent acts of the parties thereto in demanding and receiving from the maker a mortgage securing its payment.

The facts as disclosed by the evidence are that in the negotiation between the plaintiff and the corporation for the assignment of the note, the former demanded as a condition of the purchase that the corporation obtain from the maker of the note an assignment of her interest in the es-

tate of her deceased husband as security for the note. The estate consisted of real and personal property. This instrument was executed, and assigned in turn to plaintiff, with the note, as a part of the same transaction. It does not appear at what precise date the transfer of the note was made to plaintiff, but it does sufficiently appear from the evidence that the obtaining of this security by the corporation and its assignment to the plaintiff was a condition precedent to his purchase of the note, and as it was executed to the corporation as security for this note, it is to be presumed that it was made while the corporation still owned the note. [3] The instrument creating this security is a mortgage under section 2924 of the Civil Code, and it passed to the assignee of the note even without formal assignment under the provisions of section 2936 of the Civil Code.

The plaintiff, then, purchased this note, not only with notice, but upon the express consideration that it was secured by a mortgage executed by the maker to the original payee.

[4] That such mortgage security would operate to destroy the negotiability of the note in the hands of a purchaser with notice thereof if it had been executed at the time the note was made is the settled law under the decisions of this court. (*National 'Hardware Co.* v. *Sherwood,* 165 Cal. 1, [130 Pac. 881]; *Helmer* v. *Parsons,* 18 Cal. App. 450, [123 Pac. 356]; *Metropolis etc. Bank* v. *Monnier,* 169 Cal. 592, [147 Pac. 265]; *Anderson* v. *Wickliffe,* 178 Cal. 120, [172 Pac. 381]; *Crocker Nat. Bank* v. *Byrne & McDonnell,* 178 Cal. 329, [173 Pac. 752].)

It will be noticed, however, that in every case in which this court has declared the non-negotiability of a note secured by a mortgage, it has been with the qualification that the mortgage is executed contemporaneously with the note as part of the same transaction. In fact, we know of no instance in the decisions where a note duly executed as a negotiable instrument has been held to have lost that quality by a subsequent contract introducing some qualification or limitation which, if originally made part of the note contract, would have destroyed its negotiable character.

The rule as stated by Daniel on Negotiable Instruments is that, although an agreement be written upon the same paper that the note is written on, and yet if it be evident

that it was not intended to incorporate the terms of the agreement within the instrument itself, the transferability and negotiability of the instrument will not be affected by it. (Daniel on Negotiable Instruments, sec. 155; *Odiorne* v. *Sargent*, 6 N. H. 401; *Ewing* v. *Clark*, 76 Mo. 545; *American Gas. Co.* v. *Wood*, 90 Me. 516, [43 L. R. A. 449, 38 Atl. 548]; *Bay* v. *Shrader*, 50 Miss. 326; 2 Parsons on Bills and Notes, sec. 544; Randolph on Commercial Paper, secs. 190, 191.)

The Negotiable Instrument Act, as adopted in this state in 1917, prior to the execution of this note, provides that: "An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed, or discharged by payment or otherwise." (Stats. 1917, p. 1539, sec. 3128.) This is, however, but the expression of the common-law rule. The doctrine is stated in *Wettlaufer* v. *Baxter*, 137 Ky. 362, [26 L. R. A. (N. S.) 804, 125 S. W. 741], as follows: "When a paper is started on its journey into the commercial world, it should retain to the end the character given to it in the beginning, and written into its face. If it was intended to be a negotiable instrument and was so written it should so remain. Then everyone who discounts or purchases it will need only to read it to know what it is and what his rights and liabilities are."

The laws distinguishing negotiable from non-negotiable instruments are not based upon any inherent distinctions between the obligations assumed in the one class or the other of such contracts, but upon arbitrary rules established by the law-merchant to create a form of commercial paper that may pass from hand to hand unchallenged by undisclosed defenses. The qualities of negotiability are, therefore, fixed and arbitrary, and cannot be enlarged or extended upon mere considerations of logic or even equity. The negotiable instrument is expected to go through its commercial life with the qualities it is born with and none other.

This does not mean that an instrument negotiable in its origin cannot be limited and modified by subsequent contract between the parties, so as to affect the rights of subsequent holders, but only, however, to the extent that they take the paper with notice of the specific limitation.

For instance, a contemporaneous memorandum on a promissory note authorizing its payment in merchandise, or from

some particular fund, would render the instrument non-negotiable, but such an agreement subsequently attached, while enforceable between the parties and against an indorsee with notice of the limitation, would not open the instrument to other defenses of which the purchaser had no notice.

[5]   So, in the instant case, the acceptance of this note by plaintiff, with knowledge that it was secured by mortgage made subsequent to the execution of the note, doubtless binds the plaintiff by all the restrictions which section 726 of the Code of Civil Procedure places upon actions to collect a debt secured by mortgage, and might have barred the action in its present form had it been pleaded, but does not render the note non-negotiable to the extent that the maker may set up defenses of fraud in its procurement, or failure of consideration, of which the assignee has had no notice.

It follows from these conclusions that the note sued on was entitled to all the immunities of a negotiable instrument in the hands of an innocent holder for value, and it is unnecessary to determine whether as between the original parties the transaction was tainted with fraud either by reason of misrepresentations or failure to comply with the Corporate Securities Act.

The judgment is reversed.

Shaw, C. J., Lennon, J., Wilbur, J., and Shurtleff, J., concurred.

Rehearing denied.

All the Justices concurred.